No. 47,433

CAROL A. PATTON, *Appellee*, v. RONALD A. PATTON, *Appellant*.

(524 P. 2d 709)

Opinion filed July 17, 1974.

*Charles F. Forsyth*, of Erie, argued the cause, and *Clark M. Fleming*, also of Erie, was with him on the brief for the appellant.

*Morris D. Hildreth*, of Coffeyville, argued the cause, and *Richard L. Becker*, and *Robert L. Eastman*, also of Coffeyville, and *John Gariglietti*, of Pittsburg, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an appeal from an order denying a motion to change custody of the parties' minor children from the mother to the father.

The mother, Carol Patton, was granted an uncontested divorce on grounds of incompatibility on September 25, 1972. She was awarded custody of Dallas, 8, and Rhonda, 6, in accordance with a pretrial agreement approved by the court.

On May 7, 1973, the father, Ronald filed this motion to change custody, alleging that the change would be in the best interests of the children. Evidence on the motion was heard on May 14, 1973, and additional evidence by way of affidavit was later submitted on Ronald's behalf. His evidence in support of the motion went to four general points: that Carol drank, took pills, had threatened suicide, and had had sexual relations with three or possibly four different men in the eight months since the divorce. On May 31,

1973, the trial court filed its memorandum decision overruling the motion. Ronald has appealed, basically claiming an abuse of discretion.

In its memorandum the trial court correctly observed that in order to change custody it would be required to find some material change in circumstances since the divorce. See, *Irwin v. Irwin*, 211 Kan. 1, 505 P. 2d 634. There was evidence that Carol's pill-taking and suicide threats were long-established behavior patterns and that she had received psychiatric treatment for such problems off and on. The trial court noted that "[m]uch of the evidence presented by defendant was known to him at the time of the divorce in which he agreed that the mother should have custody." While it expressed some concern over Carol's pill-taking, it found that this was not, of itself, sufficient to justify a change of custody.

The evidence of drinking was, at best, inconclusive. The baby-sitter declined to say that Carol drank "more than average." A pharmacist testified to one occasion when she apparently combined liquor and a tranquilizer and had to take to her bed as a result; Carol herself described one occasion when she had four drinks and was unable to handle them. Whether both referred to the same incident is unclear. The trial court didn't consider this issue worthy of comment in its memorandum.

There remained her relations with men. Some episodes apparently took place in the home, but there was no evidence that the children were aware of them. Others occurred elsewhere, including other cities. In dealing with this issue the trial court first took note of the principles reiterated in *St. Clair v. St. Clair*, 211 Kan. 468, 507 P. 2d 206, and in particular that:

"When the issue of child custody is between the parents, it is an elementary rule in this state that if children are of tender age they almost of necessity must be entrusted to their mother's care, without weighing unduly what may be some possible short comings in the mother's character or conduct." (Syl. ¶ 2.)

The trial court went on to state that Ronald's burden was to show a change in circumstances which demonstrated "complete unfitness of the mother to have custody of her children." We think the statement makes too much of the holding in *St. Clair*. In our most recent case on the subject, *Dalton v. Dalton*, 214 Kan. 805, 522 P. 2d 378, we pointed out that the word "almost" in the *St. Clair* syllabus was not to be overlooked, saying, "Almost, but not quite of necessity, is custody of small children to be placed with the mother." (P. 809.)

The real touchstone, found in a long line of cases, was stated in paragraph 1 of the *St. Clair* syllabus and reiterated in paragraph 1 of the Dalton syllabus:

"Where the custody of children is an issue between parents the primary question for determination is what best serves the interests and welfare of the children, and all other issues are subordinate thereto."

See, *e. g., St. Clair v. St. Clair,* supra; *Irwin v. Irwin,* supra; *Hardman v. Hardman,* 203 Kan. 825, 457 P. 2d 86; *Lyerla v. Lyerla,* 195 Kan. 259, 403 P. 2d 989; *Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746; *Kimbell v. Kimbell,* 190 Kan. 488, 376 P. 2d 881.

Thus the real issue is which parent will do a better job of rearing the children and provide the better home environment. Where the evidence on that issue is in balance, tender age of the children will normally tip the scales in favor of the mother, simply because in most cases she is more available in the home.

In this case, despite its statement quoted above, we think the trial court employed the proper standard. In evaluating Carol's conduct, the trial court concluded, "The Court does not condone such behavior on the part of the mother, but does not find that this behavior has had a deleterious affect [sic] on the children or the mother's custody of them." The thrust of this statement is a concern for the children's best interests.

The court did not stop there, however, but looked to the evidence bearing directly on the welfare of the children. It found:

"The Court must also consider whether or not the children have been properly cared for. In this regard, the evidence is that the children are well mannered, well kept, doing well in school, and are adequately supported. The children have been in the care of a competent baby sitter in the home when the mother has been absent. The children have been allowed by the mother to have generous visitation rights with their father, which has undoubtedly contributed to their well-being and which should continue in the future. The father *is undoubtedly a busy businessman, and the fact that he has remarried is of little significance.* The behavior of defendant [father] also is subject to much criticism."

Further, in expressing judicial discouragement toward Carol's proposal to take the children to Oklahoma, where she intended to pursue her education, the court took note of "their apparent well-being" in their present circumstances. A closer proximity to their father "would be in the best interest of the children". While this might require Carol to modify her plans, "in view of the necessity of putting the welfare of the children first, the Court is of the opinion

that the plaintiff should give careful consideration to this matter."

We are convinced from the record as a whole that regardless of the standard articulated, the trial court made an order reflecting its judgment as to the best interests of the children. Its judgment is supported by ample competent evidence. Other contentions of the father have been considered and are not sufficient to alter the result.

In *Dalton v. Dalton*, supra, we once again recognized the limitations on our review of custody orders, holding that "[t]he trial court is in the most advantageous position to judge how the interests of a child may best be served, and its judgment in such respect will not be overturned in the absence of an abuse of judicial discretion." (Syl. ¶ 2.)

We find no abuse of discretion here, and the judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., dissenting: I respectfully dissent for the reason that the appellant was denied a fair hearing on his motion to change custody. It is obvious from a reading of the memorandum decision of the trial court that the able trial judge took the literal language from the opinion in *St. Clair v. St. Clair*, 211 Kan. 468, 507 P. 2d 206, and erroneously placed upon the father the burden to prove that the mother of the children was unfit to have custody before the court would consider changing custody to the father. After referring to *St. Clair* the trial court made the following statement:

". . . With this rule in mind, the Court is of the opinion that there must be shown some material change in circumstances since September 25th, 1972, which demonstrates complete unfitness of the mother to have the custody of her children. . . ."

As pointed out in the majority opinion the issue which the court should have determined from the evidence was what best serves the interests and welfare of the children. The evidence presented in the hearing on the motion to change custody should have been weighed and considered with that test in mind. It seems clear to me in this case that the trial court did not apply the proper test in determining the issue of child custody and therefore the case should be reversed for a rehearing.

FATZER, C. J., joins in the foregoing dissent.