No. 47,406

Deanna L. Hardenburger, *Appellant*, v. Charles C. Hardenburger, Jr., *Appellee.*

(532 P. 2d 1106)

Opinion filed March 1, 1975.

*John E. Wilkinson,* of Colmery, McClure, Funk, Letourneau & Wilkinson, of Topeka, argued the cause and was on the brief for the appellant.

*Jerry L. Donnelly,* of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal from an order denying a motion to change custody of the parties' two minor children from the father to the mother. The motion was filed six months after the mother was granted a divorce on grounds of incompatibility and the father awarded custody of the two minor sons.

Deanna and Charles Hardenburger were married on June 10, 1962, just a few months before Charles was discharged from the Navy. For convenience they shall be referred to as plaintiff or Deanna and as defendant or Charles. The parties are in their middle thirties, they are college graduates and neither had been married before. Both husband and wife came from rural Kansas communities. Charles was raised on a farm in Washington County,

near Haddam, and Deanna grew up in Valley Falls, where her parents still reside. Shortly after their marriage the Hardenburgers moved to Haddam where Charles taught school for a year and purchased a substantial portion of the family farm from his father. Two sons were born to the marriage, Charles in 1963 and Paul in 1966. A short while after the birth of their second child the parties began to grow apart, each claiming the degeneration of the marriage was due to the other's psychological and sexual irregularities. In 1969 Deanna left the home, but a reconciliation was effected. Illustrative of the serious problems that existed were Deanna's unsubstantiated claims that Charles had engaged in numerous heterosexual and homosexual affairs. Most serious of Deanna's allegations were those charging Charles with improper conduct of a sexual nature involving their sons.

In May of 1972 Deanna moved to Valley Falls and filed an action for divorce on the ground of incompatibility in Jefferson County. Charles, who had no warning of Deanna's intention until summons was served upon him, unsuccessfully sought reconciliation. Trial commenced on September 22, 1972, and after hearing the evidence the trial court suggested the parties submit to a psychiatric evaluation in order to aid the court in determining the issue of child custody. The parties agreed and the matter was taken under advisement by the court until it had received the results of psychiatric examinations of the parties. These examinations, which both Deanna and Charles willingly submitted to, were conducted by Dr. Karl Targownik, a psychiatrist.

After receiving Dr. Targownik's report, the trial court reconvened the case on November 15, 1972. Both parties testified again and were interrogated in the light of the psychiatric evaluation concerning the question of child custody. Further testimony was also submitted with respect to property division. At the conclusion of the hearing the case was taken under advisement. On December 26, 1972, the trial court filed a comprehensive memorandum decision in which all of the evidence was reviewed. The court found *inter alia:*

". . . allegations made by plaintiff, charging sexual abberations on the part of defendant, are not true . . . the defendant is an entirely normal heterosexual man, of good moral character."

Concerning child custody the trial court ruled as follows:

"The court finds the best interests of the children will be served by giving their general custody to the defendant, the father. The defendant has arrange-

ments available for the care of the children; they will grow up in a proper environment; it seems to the court that boys of this age are more in need of a father image presented by this defendant than in need of a mother image of preoccupation with invalid sexual norms. Plaintiff should have temporary custody from time to time."

On June 25, 1973, Deanna filed a motion for change of custody in which she alleged a change of circumstances entitling her to custody of the children. On July 24, 1973, a hearing was held on this motion. Deanna testified that she had been treated by a psychiatrist since the divorce; that she had overcome her mental problems; and that she had secured a teaching position at Whiting for the next school year. After hearing the testimony of several witnesses the trial court, in a second comprehensive opinion, concluded that no change of circumstances had been shown which warranted changing custody of the children. From this order denying a change of custody Deanna appeals.

Deanna's appeal is primarily based on two alleged trial court errors. In her first point Deanna argues that the court, in deciding the issue of child custody, erroneously considered the psychiatric report on her prepared by Dr. Targownik because it had not undergone the "credibility procedures of cross-examination and confrontation." The point is not well-taken for two reasons. First, the contention is directed at a matter which took place during the principal trial which resulted in a judgment from which Deanna did not appeal. Second, it may be noted that in addition to submitting to psychiatric evaluation, the parties, through counsel, stipulated that the doctor's report could be used as evidence. Plaintiff (Deanna) did reserve the right to call Dr. Targowik as a witness, but she made no attempt to exercise this right. The binding effect of a stipulation freely and intelligently entered into is well-settled in our case law. (*Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 512 P. 2d 438.) The circumstances under which a court is justified in relieving a party are limited and plaintiff has shown no grounds which dictate she should be relieved of her stipulation.

In her second point on appeal plaintiff charges the court erred in not ruling that custody of the children of tender years should have been changed to her. Plaintiff's arguments in support of her motion are premised on evidence which she contends demonstrates that her mental and emotional problems have been rectified. Plaintiff builds upon this proposition by arguing that having reached the

plateau of normalcy she is, by virtue of language found in several Kansas cases, especially *St. Clair v. St. Clair,* 211 Kan. 468, 507 P. 2d 206, entitled to custody of the children.

In an unbroken line of decisions this court has held that the jurisdiction of the district court over custody of minor children in a divorce action is a continuing jurisdiction. The court may, on proper motion and notice, change any previous order of custody whenever it finds a material change in circumstances since the divorce or the last order of custody which justifies such modification. (*Patton v. Patton,* 215 Kan. 377, 524 P. 2d 709; *Irwin v. Irwin,* 211 Kan. 1, 505 P. 2d 634; and *Duffy v. Duffy,* 176 Kan. 112, 268 P. 2d 931.)

Plaintiff called three witnesses at the change of custody hearing—her minister, a social worker, who knew her, and her psychiatrist, Dr. James Nelson. The minister and the social worker testified that they knew plaintiff, considered her a fit person, and knew of no reason why she should not be given custody of the children. Dr. Nelson testified that he had been treating plaintiff for a period of nearly six months, during which time plaintiff had made great progress in overcoming her mental problems and in achieving a normal perspective on sexual matters. Although Dr. Nelson was of the opinion that plaintiff could function properly were she to be given custody of the children, he did admit that plaintiff was in need of continued psychiatric treatment and that under the stress of holding a job and rearing the two boys there was a possibility that her problems would reappear. There was no evidence introduced at the hearing to indicate that defendant was in any respect an unfit parent or that he had not taken excellent care of the boys since they had been placed in his custody. Inasmuch as plaintiff, in her argument, places great weight on our decision in *St. Clair v. St. Clair,* supra., it is appropriate to note that the manner in which the psychiatric test results were considered in this case differs drastically from the manner there employed. In *St. Clair* it was said the trial court systematically rejected testimony concerning Mrs. St. Clair's improved mental condition at the time of trial and took at face value the testimony of the same witnesses concerning her conduct during a period of mental illness, more than a year before the trial and prior to the treatment which greatly improved her condition. In the instant case the court, both at trial and at the custody hearing, properly sought to elicit and utilize the most current information available concerning Deanna's mental health as a basis for its decision. After considering all of the evidence submitted at the

custody hearing, the court concluded there was no substantial change in circumstances which would warrant a change of custody.

Plaintiff contends that absent a finding of unfitness on her part the law of this state dictates that she be given custody of the children. Relying again on *St. Clair*, supra., plaintiff argues that it is an elementary rule governing child support that when the children are of "tender age" they should be entrusted to their mother's care—plaintiff misconstrued *St. Clair.*

In the recent case of *Dalton v. Dalton*, 214 Kan. 805, 522 P. 2d 378, Mr. Justice Fontron discussed the proper interpretation of *St. Clair* and pointed out that while the circumstance of "tender age", when it exists, is a factor always recognized and given great weight by this court in custody cases, application thereof is not absolute, but always subject to the exercise of judicial discretion. Our opinion in *St. Clair* reaffirms the overriding rule that where the issue of custody is between parents, the paramount consideration is the best interest and welfare of the children. "Tender age", especially in the case of the very young is naturally and of necessity a factor to be given weight, but it like other relevant considerations must be subordinated to the children's physical, intellectual, and emotional well-being. To blindly award custody to a mother on the strength of the "tender years doctrine" would be to lose sight of the fact that "tender years" is merely one, albeit an important one, of the several vehicles by means of which a decision respecting the children's custodial well-being may be reached. "Tender years" is not an independent absolute doctrine which runs parallel to our basic "best interest" rule. It is nothing more than an important factor to be considered in determining how a child's interest and welfare are best served.

The overriding rule heretofore mentioned is cogently stated in *Dalton v. Dalton*, supra, wherein we held:

"Where the custody of children is in issue between parents the primary question for determination is what best serves the interest and welfare of the children, and all other issues are subordinate thereto." (Syl. ¶ 1.)

The real touchstone in custody cases was considered again in *Patton v. Patton*, supra, where we said:

"Thus the real issue is which parent will do a better job of rearing the children and provide the better home environment. . . ." (p. 379.)

The importance of a child's age and dependency as elements of the best interest test are also indicated in *Patton* where we said:

". . . Where the evidence on that issue [or which parent will do a better job of rearing the children] is in balance, tender age of the children will normally tip the scales in favor of the mother, simply because in most cases she is more available in the home." (p. 379.)

This court has consistently held that the trial court is in the most advantageous position to judge how the interests of a child may best be served, and that its judgment in such regard will not be overturned in the absence of an abuse of judicial discretion. (*Hazelwood v. Hazelwood*, 190 Kan. 493, 376 P. 2d 815; *Gardner v. Gardner*, 192 Kan. 529, 389 P. 2d 746; and *Dalton v. Dalton* supra.) In light of the facts heretofore enumerated, we must conclude the evidence in the instant case is, as a matter of law, insufficient to warrant a holding that the trial court abused its discretion in not finding a change of circumstances.

The judgment of the court below is affirmed.