No. 47,622

Robert H. Schreiner, *Appellee,* v. Charlotte J. Schreiner, *Appellant.*

(537 P. 2d 165)

Opinion filed June 14, 1975.

*Jack N. Turner,* of Wichita, argued the cause and was on the brief for the appellant.

*Eugene G. Coombs,* of Coombs, Lambdin, Kluge and Garrity, Chartered, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: On February 9, 1973, appellee (Robert H. Schreiner) was granted a divorce from appellant (Charlotte J. Schreiner). Robert was awarded custody of the couple's only child (Tracy Kristine), who was three years of age at the time. Some six months later Charlotte filed a motion for change of custody which was heard and denied on October 24, 1973. Charlotte appealed from the judgment rendered on February 9 and the order overruling her motion for change of custody. On December 20, 1973, the trial court sustained Charlotte's motion to consolidate her appeals.

The Schreiners were married on June 4, 1969, in Pratt where Charlotte's parents resided. Soon after their marriage the couple settled in Wichita where Robert was employed at a grocery store and attended Wichita State University part-time. During a part of the marriage Charlotte supplemented the family income by baby-sitting and working as a secretary.

The evidence discloses that in 1971 the marriage began to disintegrate. Charlotte testified that after having thought about the matter for a number of months she concluded she no longer loved her husband and could not stand to live with him. On October 28, 1972, Charlotte demonstrated her feelings of marital discontent by

spending the night with another man. The next day Robert unsuccessfully urged Charlotte to see their parish priest or a marriage counselor in an attempt to work out their difficulties. On October 30 Robert and Charlotte took Tracy to Pratt to stay with Charlotte's parents. On their return to Wichita Robert agreed that he would move out of the home for a week in order to give Charlotte time to think. Charlotte was supposed to pick up Tracy on either Friday or Saturday of the following week and return her to Wichita. Charlotte called her parents and informed them she was ill and unable to get Tracy. About midnight Sunday Charlotte's mother called Robert and asked that he come for Tracy, which he did. Robert later learned that Charlotte had not been ill, but was duck hunting with a friend. Robert testified that at that point he concluded he should move back into the home and take care of Tracy. He further testified that Charlotte agreed to move out and get an apartment where she could keep Tracy part of the time, but "she agreed to leave Tracy with me and let me have custody at the time."

On November 13, 1972, Robert filed his petition for divorce and by ex parte order was granted temporary custody of Tracy.

The voluminous record (270 pages) discloses considerable testimony of the parties and their respective friends and relatives at both the trial and on the motion to change custody. Included in the evidence was a letter written to Robert by Charlotte's mother in which the mother stated that Charlotte was not "in the right shape to take care of Tracy at the present time." Some of the testimony adduced was in conflict.

In granting a divorce to Robert the trial court found:

". . . [T]hat the plaintiff has performed every duty devolving upon him as husband of the defendant, but that his wife, the defendant, has been guilty of certain actions which constitute gross neglect of duty towards the plaintiff. . . ."

Concerning child custody the trial court's findings appear as follows:

"THE COURT FURTHER FINDS that the evidence discloses in this case that on more than one occasion the defendant did stay out for a period of all night, that on one occasion she informed her parents she could not pick up the child because she was sick, but instead was duck hunting with a friend; on or about November 6, 1972 she left the homestead and left the minor child, Tracy, with the plaintiff; she has applied for welfare and did receive funds for a minor child that was not in her custody; that the clothing was not always clean, nor were the meals always properly prepared.

"THE COURT FURTHER FINDS that it is the welfare and best interests of

the minor child, Tracy K. Schreiner, that her permanent care, custody and control be awarded to the plaintiff. In that respect the Court finds that plaintiff's Exhibit 1, introduced during the trial of this matter, be made a part of the findings, a copy of which is attached hereto and made a part hereof the same as if fully set out herein."

The court gave Charlotte rights of reasonable visitation.

At the hearing on Charlotte's motion for change of custody much of the testimony introduced was a restatement of testimony given at the trial. The trial court found in pertinent part:

"There were sufficient findings to warrant the custody of Tracy in Mr. Schreiner in February. There has been no evidence presented to show that that home and that custody has been detrimental to the child. There has been no showing that that custody has not been in the best interests of the child. There is no showing in any way that Mr. Schreiner has negated any responsibilities falling upon him as a homemaker. Certainly sympathies enter into feelings toward anyone who wants custody of their child, be that a father or a mother, and does not have custody of the child, and it's easy to get emotional over these situations. But the Court feels strongly that a permanent home is an important factor in the stability of a growing child, and there is nothing to dissuade the Court from the opinion that Mr. Schreiner is performing his functions as a homemaker in the best interests of this child.

"The evidence at this hearing is that for a short period of time Mrs. Schreiner has engaged in a different occupation. Certainly it would appear an occupation with a good future. And she is to be commended for it.

"The evidence further shows that visitation has been abundant, both on the part of the grantor and the grantee, and that a parent who does not have custody cannot expect and should not expect to spend as much time with that child as if she had custody. . . ."

On appeal Charlotte (appellant) raises two main points. (1) That the trial court abused its discretion in placing custody of the child with appellee (Robert) at the divorce trial; and (2) that the trial court abused its discretion in not changing custody of the child from Robert to Charlotte on her motion for change of custody.

Appellant sets out five subpoints under point one—each of which are apparently advanced to illustrate a separate example of the trial court's alleged abuse of discretion. Most of these examples merit little discussion. In subpoint one appellant asserts that appellee breached an agreement that she would have temporary custody of the child and that appellee induced the court into giving him temporary custody by leaving with it the impression appellant had abandoned the child and the home. The record is totally devoid of support for these arguments. If appellee actually attempted to

mislead the court in any manner appellant could have raised and clarified this issue at the divorce hearing—she did not do so.

In subpoints two, three and four appellant argues the trial court placed undue emphasis on (1) alleged shortcomings in her care of Tracy; (2) a letter from Charlotte's mother to Robert; and (3) testimony that on more than one occasion Charlotte stayed out all night. Appellant's arguments are not supported by the record. All of the matters complained of were relevant evidentiary factors properly before the court and deserving of consideration in deciding the question of custody. The weight to be given such evidence was for determination by the trial court which heard and observed the witnesses.

In her fifth subpoint under point one, appellant contends the trial court's statements at the conclusion of the trial indicated bias against her and in favor of appellee. The statement by the court which appellant complains of reads as follows:

". . . I can recall one time in the last eight years where on a divorce case there was absolutely no fault on the part of one of the spouses as shown by the evidence. This is certainly that situation. The only ground for divorce stated against Robert Schreiner was that Mrs. Schreiner doesn't love him. I find that difficult to—difficult statement upon which to base any ground for divorce. His conduct during the marriage from the evidence appears to be impeccable. He appears in no way to have disregarded his duties as a father and as a husband, and certainly with the evidence in this line, the best interests of this child would be served if the permanent care, custody and control were placed in him. . . ."

The statement appears to be nothing more than a summary by the trial court of the reasons for its decision. There is no basis for a claim of bias in this regard. In all of her arguments in support of her first point appellant has actually done nothing more than suggest that a reexamination of the evidence, in the light most favorable to her, would have permitted different findings. Appellant overlooks the statement appearing—time and time again—in our opinions that this court is not concerned with conflicting evidence, nor with the weight and credibility to be accorded the testimony of witnesses; that responsibility in these areas rests with the trial court which is in the best position to judge such matters. The interest of an appellate court is directed only to such evidence as supports the findings of the trial court, and not to that which might tend to establish contrary findings or a different result. An appellate court must accept the evidence which is most favorable to the prevailing party and where there is substantial competent evi-

dence in the record to sustain a judgment—this court must sustain it rather than speculate as to what other dispositions the record might support. (See *Wehking v. Wehking,* 213 Kan. 551, 516 P. 2d 1018; and Vols. 1-3 Hatcher's Kansas Digest [Rev. Ed., Permanent Supplement], Appeal and Error, §§ 502-508.) The instant record is replete with evidence which supports the findings of the trial court.

In her second major point, appellant asserts four instances in which she claims the trial court abused its discretion in not sustaining her motion to change custody.

First, appellant says that the practical effect of the trial court's denial of her motion to change custody is that Tracy has been and still is in the care and control of her paternal grandparents. Appellee admits that he was assisted by his parents in caring for Tracy while he was at work. This court has never held that a divorced father, who is otherwise entitled to custody of his child, should be deprived thereof simply because the necessities of making a living compel him to temporarily entrust care of the child to grandparents.

The cases cited by appellant such as *Bailey v. Bailey,* 164 Kan. 653, 192 P. 2d 190; and *Stout v. Stout,* 166 Kan. 459, 201 P. 2d 637, are not in point; all deal with situations where the issue of custody was between a parent and grandparent. These cases all stand for the rule last reiterated in *Browning v. Tarwater,* 215 Kan. 501, 524 P. 2d 1135, that a parent who has not been found to be an unfit person to have custody where that question is in issue, is entitled to custody as against grandparents or others who have no permanent or legal right to custody. An assertion similar to that made here was considered by the court in *Dodd v. Dodd,* 171 Kan. 46, 229 P. 2d 761, wherein the court stated:

". . . We have no quarrel with the rule announced in the foregoing decisions. The trouble, from appellant's standpoint, is that such rule applies only to cases where the sole issue before the trial court is whether the parents or the grandparents are entitled to custody of minor children and has no application to a case where both parents are contending for their custody. We have never held that a father whose home has been broken up and who is otherwise entitled to custody of his child can be deprived of that custody simply because the exigencies of making a living compel him to keep it in the home of his parents or that a trial court abuses its discretion when—as here— it requires him to keep it there so long as such court deems it to be to the best interest of the child that that be done." (p. 49.)

Appellant admits that should she be given custody of Tracy she likewise would have to leave the child with another during those hours she was at work or school.

Appellant's other assertions in support of her second point are: (2) Jealous exercise of the care, custody, and control of Tracy by her father and his parents has resulted in denial of reasonable visitation rights of the mother, and estrangement between the child and her mother; (3) appellant is concerned with changes and regressions in Tracy's development since she has been in the care and custody of appellee and his parents; and (4) the court abused its discretion in not recognizing appellant's "change in circumstances" and her fitness and ability to care for Tracy and in not changing custody from appellee to her.

With respect to denial of visitation rights, appellant's claim is totally unsupported by the record. The trial court found that "visitation has been abundant" and the evidence fully supports the finding. The record shows that only on one or two occasions has appellant's visitation been hindered by a misunderstanding as to time or by reason of inconvenience on the part of appellee. The evidence discloses that appellant has been permitted to visit and usually to take the child during the afternoon and evening on an average of three times a week.

There is no evidence that Tracy's development has regressed. All of the evidence on this point is to the contrary and the trial court so found.

In support of subpoint four appellant relies heavily upon the decision in *St. Clair v. St. Clair,* 211 Kan. 468, 507 P. 2d 206. Appellant asserts that refusal to grant her custody because of Tracy's tender age amounts to abuse of discretion. Appellant has misinterpreted our decision in *St. Clair,* as was the case in *Dalton v. Dalton,* 214 Kan. 805, 522 P. 2d 378, and *Hardenburger v. Hardenburger,* 216 Kan. 322, 532 P. 2d 1106, wherein we pointed out the proper interpretation to be given *St. Clair.* In the instant case the record and the court's findings disclose that all of the evidence for rehearing was carefully considered by the trial court.

This court has always recognized the value of maternal love and care where children are of tender age, and absent a finding of unfitness, a mother is ordinarily entitled to the custody of a child of tender years. There is no fixed rule, however, requiring that the custody of a minor child be awarded to its mother rather than to its father. (*Lewis v. Lewis,* 217 Kan. 366, 537 P. 2d 204; *Hardenburger v. Hardenburger,* supra; and *Moudy v. Moudy,* 211 Kan. 213, 505 P. 2d 764.) As stated in *Moudy* and *Dalton,* and most recently in *Hardenburger,* where the custody of children is in issue

between parents, the primary or real question for determination is what best serves the interest and welfare of the children, and all other issues are subordinate thereto.

All of appellant's argument on appeal, both as to the court's original decree and its ruling on her motion for change of custody, go to abuse of discretion. In *Stayton v. Stayton*, 211 Kan. 560, 506 P. 2d 1172, Justice Prager speaking for the court in a divorce action described abuse of discretion in this language:

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." (p. 562.)

In the instant case the appellant filed her motion for change of custody within a few months after the original decree was entered. The evidence shows that for a short period of time appellant has been involved in a different occupation. No evidence was presented which showed appellee was neglecting his responsibilities or that Tracy's best interest would be better protected by a change of custody. The applicable rule is stated in *Prier v. Lancaster*, 169 Kan. 368, 219 P. 2d 358, wherein we held:

"The paramount issue in any hearing between parents involving a change in custody of their child is not the desire or wishes of the parents but whether circumstances and conditions have been so altered as to make a change in custody advisable in view of the best over-all interests of the child." (Syl. ¶ 4.)

After a careful review of the entire record we are unable to say that abuse of discretion has been shown in the instant case with respect to either of the custody orders appealed from.

The judgment is affirmed.

FROMME, J., not participating.