(599 P.2d 305)

No. 50,148

Earl L. Neis, *Appellee,* v. Connie Sue Neis, *Appellant.*

Petition for review denied November 8, 1979.

Opinion filed August 31, 1979.

*David J. Berkowitz,* of Lawrence, for the appellant.

*Eugene C. Riling,* of Riling, Burkhead & Rhudy, Chartered, of Lawrence, for the appellee.

Before Foth, C.J., Rees and Swinehart, JJ.

Swinehart, J.: This is an appeal from a judgment of the district court of Franklin County annulling the marriage between the plaintiff Earl L. Neis and the defendant Connie Sue Neis. On appeal the defendant contends that the trial court erred (1) in awarding custody of the couple's two minor children to the plaintiff, (2) in dividing the parties' property, and (3) in refusing to award additional attorney fees to the defendant.

The parties were married in Lawrence on November 7, 1976, and two children, twins Earl L. Neis III and Valerie S. Neis, were born on January 31, 1977. This was the plaintiff's first marriage

and the second marriage for the defendant. During her first marriage, the defendant had two children who now reside with her first husband in Missouri. The plaintiff is 25 and the defendant is 21 years of age.

During the early fall of 1977, the parties' marriage began to deteriorate and towards the end of September or early October, they separated. Plaintiff charged that his wife had been staying out all night, while she claimed she was at a friend's house. Further, defendant had had a nervous condition due to medical problems impairing her ability to keep the house. She had undergone a partial hysterectomy after the birth of the twins and had been receiving medical attention since that time. While they were together, the plaintiff helped care for the children by feeding, clothing and bathing them.

After the separation, the children remained with the defendant until November 15, 1977, when she voluntarily relinquished custody to the plaintiff. She was nervous and frightened at the time she gave up her children and feared she might hurt them. She had asked the plaintiff if he would be willing to allow her sister-in-law and brother to care for the children. The plaintiff refused this offer and requested that he be given custody of the twins. The defendant believed her husband had legal papers affording him the right to obtain the children, but he denies making such a representation.

After plaintiff petitioned for a divorce, a hearing was held on the defendant's motion to gain custody of the two minor children pending the outcome of the proceedings. The trial court denied her motion, ordered home studies on both parents by SRS, and appointed a guardian ad litem for the children. A few days prior to the divorce hearing, the defendant learned that her former husband had not divorced her in California, and thereafter plaintiff's petition was amended to seek a dissolution of the marriage by annulment.

There was much conflicting testimony concerning the relative abilities of the parties to care for the children. During the divorce proceedings, the children and their father were living with his mother and stepfather in Lawrence. While the plaintiff worked as a welder in Ottawa at Haven Steel, the children remained in Lawrence with a baby-sitter. After work the plaintiff cared for the children by preparing their meals, playing with them and bathing

them. Both the plaintiff's mother and stepfather were willing to continue to help care for the children. According to the SRS report, there was sufficient space for the plaintiff and his children in the Lawrence home, although plaintiff did intend to move when his affairs were in order.

Defendant was living in a mobile home in Mayetta with her fiance. Since she had no plans to work, she would be able to remain at home with the children during most of the day, which was viewed as a positive factor in the SRS report.

There was additional testimony that Mrs. Neis had lived with a friend and the children for about a month during her separation from the plaintiff. During that time she often left the children at 3:00 p.m., and did not return until 3:00 a.m. Part of that time she was apparently employed as a barmaid. Once she was gone for three days without communicating with anyone regarding her whereabouts. The children remained with the friend during these times. There was testimony that Mrs. Neis was not properly concerned with the children's welfare while living with her friend.

There were general allegations that Mr. Neis drank to excess on occasion and had once spanked the twins for no reason after coming home drunk, although there was no testimony that he had ever abused the children in any other fashion. In fact, they appeared to be perfectly normal, well-adjusted children.

Besides awarding custody of the children to the plaintiff, the court divided the personal property accumulated by the parties, and ordered the plaintiff to pay the bulk of the couple's debts, although the defendant was ordered to equally pay the indebtedness owed to Personal Thrift. Further, plaintiff was to pay the guardian ad litem fees and costs in the amount of $396.45. At the hearing on the defendant's motion to obtain temporary custody of the children, the court ordered the plaintiff to pay the defendant's attorney fees of $200, but refused to award additional fees to defendant's attorney after the annulment was entered. Defendant alleges that the court improperly divided the parties' property by refusing to award her a 1957 Chevrolet valued at $50 and a color television set which the plaintiff had admittedly given her as a gift.

In her first issue on appeal the defendant urges that since the children were a little over one year old at the time of the hearing

they were clearly children of tender age, and as such custody should have been awarded to her, absent a finding of unfitness. *St. Clair v. St. Clair,* 211 Kan. 468, 507 P.2d 206 (1973). While the trial court did decline to find either parent unfit, a mother need not be found unfit before custody may be awarded to the father. *McClaren v. McClaren,* 214 Kan. 217, 519 P.2d 720 (1974).

Defendant's reliance upon the tender years doctrine is insufficient to support her argument, since that doctrine's importance has been eroding in recent years. *Parish v. Parish,* 220 Kan. 131, 551 P.2d 792 (1976); *Schreiner v. Schreiner,* 217 Kan. 337, 537 P.2d 165 (1975). Rather, the paramount principle guiding the trial court's custody decision must be the best interests of the children. *Schreiner v. Schreiner; Hardenburger v. Hardenburger,* 216 Kan. 322, 532 P.2d 1106 (1975); *Dalton v. Dalton,* 214 Kan. 805, 522 P.2d 378 (1974). All other considerations have been found subordinate to the best interest determination.

In *Hardenburger v. Hardenburger,* 216 Kan. at 326, the court stated that tender age may continue to receive consideration in custody cases:

"[B]ut it like other relevant considerations must be subordinated to the children's physical, intellectual, and emotional well-being. To blindly award custody to a mother on the strength of the 'tender years doctrine' would be to lose sight of the fact that 'tender years' is merely one, albeit an important one, of the several vehicles by means of which a decision respecting the children's custodial well-being may be reached. 'Tender years' is not an independent absolute doctrine which runs parallel to our basic 'best interest' rule. It is nothing more than an important factor to be considered in determining how a child's interest and welfare are best served."

In *Parish v. Parish,* 220 Kan. at 132, the Supreme Court reviewed the relevant case law regarding the role of the tender years doctrine and again stated that there is no fixed rule requiring that custody of the minor children be awarded to the mother rather than the father. "Which parent will do a better job of rearing the children and providing a better home environment is highly relevant."

The tender years doctrine does not mandate that a mother be awarded custody of children of tender years even if she is otherwise fit. The determination of the trial court regarding custody may not be disturbed without an affirmative showing of abuse of discretion. *Parish v. Parish,* 220 Kan. at 133; *Hardenburger v. Hardenburger,* 216 Kan. 322.

Defendant emphasizes that she would be able to remain at home with the children, whereas her husband would be forced to leave them with a baby-sitter while he was at work. Further, plaintiff intended to move from his parents' house when he was economically able to do so, thereby depriving the children of one of the positive features of their home environment recognized by the SRS worker in the home study. Also, the defendant claims that in effect the court was granting custody not to the plaintiff but to his mother and stepfather. "This court has never held that a divorced father, who is otherwise entitled to custody of his child, should be deprived thereof simply because the necessities of making a living compel him to temporarily entrust care of the child to grandparents." *Schreiner v. Schreiner*, 217 Kan. at 341.

The appellate court may not concern itself with conflicting evidence nor with the weight or credibility of the evidence presented. Rather, it must accept the evidence most favorable to the prevailing party, and where there is substantial competent evidence on the record to sustain the judgment the appellate court must do so rather than to speculate as to whether the record might support other dispositions. *Schreiner v. Schreiner*, 217 Kan. at 340-341. Here, the trial court heard testimony that the plaintiff father had been providing a good home environment for the children with the assistance of his parents and baby-sitters. Both his mother and stepfather indicated their willingness to continue to assist him until he was able to move to another place. Further, the court was not presented with any evidence to show that the children had been abused or mistreated in any fashion since they had been with the plaintiff. The plaintiff had demonstrated that he was able to care for the children by feeding, clothing and bathing them, and that he did not rely on his mother or stepfather to do so during the times he was home from work. The court especially noted that the children had been in a stable environment since their mother had relinquished custody in November, 1977, and that it would be in the best interests of the children to remain with their father.

Upon a careful review of the record, it cannot be said that the defendant has established that the trial court abused its discretion in awarding custody of the minor children to the plaintiff.

Defendant next contends that the trial court erred by approving a division of property which denied her possession of a television

set, and by further denying her possession of the Chevrolet automobile worth $50. In addition, she claims the court erred by failing to award her attorney fees beyond the $200 which she received at the temporary custody hearings.

In *Cady v. Cady,* 224 Kan. 339, 581 P.2d 358 (1978), the court held that under K.S.A. 60-1610 a trial court has the authority to divide property acquired by either spouse after the marriage, and no longer is restricted to a division of property accumulated as a direct result of the joint. efforts of the spouses. Upon filing for divorce "each spouse becomes the owner of a vested, but undetermined, interest in all the property individually or jointly held. The court is obligated to divide the property in a just and equitable manner, regardless of the title or origin of the property." *Cady,* 224 Kan. at 344. *Cady,* therefore, requires rejection of the defendant's argument that she alone was entitled to the television set.

In dividing property the court must consider the financial situation and needs, earning capacity and conduct of the parties to arrive at an award that is just and reasonable under the circumstances. There is no fixed rule regarding the proportion of property to be given to each party. *Stayton v. Stayton,* 211 Kan. 560, 506 P.2d 1172 (1973). Upon review of the record in this case, we find that the trial court did not err by awarding the television set or the second automobile to the plaintiff. The division of property is a matter of discretion with the trial court. *Williams v. Williams,* 219 Kan. 303, 548 P.2d 794 (1976). Here the trial court did not abuse its discretion in dividing the couple's property.

With respect to the refusal to award additional attorney fees, K.S.A. 60-1610(*g*) allows the court to award costs and attorney fees to either party "as justice and equity may require." Under K.S.A. 60-1610 the trial court has the discretion to determine whether or not an award should be made for attorney fees. Each case must be examined on its own facts and circumstances to determine whether that discretion was abused. *Dunn v. Dunn,* 3 Kan. App. 2d 347, 595 P.2d 349 (1979). We find that the trial court did not abuse its discretion by failing to award additional attorney fees to the defendant. The record does not disclose the additional amount sought by the defendant, only that she had already received $200. However, the plaintiff was assessed the guardian ad litem fee and the court costs in the amount of

$396.45, and only had take-home pay of approximately $146 per week, on which he had to maintain both himself and the twins. Therefore, the court could have reasonably found that the defendant should bear some of the burden of the attorney fees.

Judgment is affirmed.