No. 51,444

GROVER HILL, *Appellee,* v. LINDA HILL, *Appellant.*

(620 P 2d 1114)

Opinion filed December 6, 1980.

*John F. McClymont,* of Ryan, Kent, Wichman & Walter, of Norton, argued the cause and was on the brief for the appellant.

*Randall W. Weller,* of Jones, Weller & Elliott, of Hill City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal from an order of the Graham District Court changing custody of a four-year-old boy from mother to father. The case comes before us following the granting of a petition for review of the decision of the Court of Appeals. See *Hill v. Hill,* 5 Kan. App. 2d 1, 611 P.2d 158 (1980).

The parties, Grover and Linda Hill, were married in 1974. They have one child, Brian, born September 18, 1975; the trial court's order changing his custody is the target in this appeal.

On October 30, 1978, Linda moved out of the home she and Grover had shared in Morland, Kansas. She took Brian with her, and ostensibly went to live with an aunt in Farmington, New Mexico. Grover filed a petition for divorce in November, 1978; in it, he alleged that Linda was a proper person to have the custody of Brian. Linda waived service of summons and entered her voluntary appearance in the case. The parties entered into a property settlement agreement, by which they provided for custody of the child to be in Linda, subject to reasonable visitation, and they agreed upon support payments. A default divorce decree was entered on March 5, 1979; it incorporated and approved the

agreement of the parties. Grover filed a motion to change custody on July 5, 1979, four months after the divorce was granted; Linda responded with a motion to change or modify visitation rights. An evidentiary hearing was held on August 9, 1979, and both motions were heard by the trial court.

These facts were developed at that hearing. Grover had remained in Morland; he was living in the home which the parties acquired during the marriage; and he was still working for the same employer for whom he had worked in the oil fields near Morland for several years. Linda, however, was not living with her aunt in Farmington. About two weeks after she arrived in New Mexico, she moved in with Larry Holden in Aztec, New Mexico, and she has been living with him ever since. They live in a two-bedroom trailer house; Brian lives with them. Larry's 52-year-old brother, Tommy, also lives there, although he is away quite often for four or five days at a time. He and Brian share a bedroom.

About two months after the divorce was granted, Linda brought Brian to Kansas to stay with Grover while she accompanied Larry to California, where he was going at his employer's request. Upon their return from California, Linda came to Kansas to get her son, but he was visiting relatives in Garden City. She returned to New Mexico without him, and shortly thereafter she was advised that Grover was going to file a motion to change custody. The evidence indicates that most of the parties' relatives live in Kansas; that both parties love Brian; that both desire his custody; and that both give him good physical care.

The trial judge, in announcing his decision, said:

"On the one hand we have a father who owns a house and evidently a fairly stable job who has provided a stable environment for the child who wants the child. We have a mother who certainly has a mother's love for the child and wants the child. It would be a lot easier if I heard testimony that one of them did not want the child or did not have a proper place to care for it. I can only . . . determine what I think is the best . . . for it at this time.

"I certainly do not approve of the mother living with—a single woman living with two single men in a two bedroom trailer house. I suppose that there is absolutely not any way for me to not be somewhat prejudiced by that type of morality. . . . I don't condone people living together that are single, and I assume in most states it's against the law. . . .

. . . .

"I've heard absolutely no testimony from anybody indicating that either parent does not take care of this child properly, that it's clean, it's well fed, it gets its bath.

The only thing I can do at this point, and I want you to all know that I have continuing jurisdiction over these matters and if a change of circumstances arises again, I'll hear it again, I assume, if you can't agree upon something. But my only feeling at this time is that the child would be in a better and more stable environment with the father. I will change the custody to the father at this time subject to the reasonable visitation by the mother. . . .

"Again, there is absolutely no way that I can . . . make both of these parents happy. And when you leave it up to me, the only thing I can do is what I think is right for the welfare and the benefit of this child. And after hearing the testimony, it's my feeling that the child would be better off with its father at this time."

The court's order was set forth in a journal entry filed August 24, 1979. That order included the following finding:

"3. That each party resides at the respective residence occupied by each party at the time of the divorce, on March 5, 1979."

The journal entry then proceeded to include the court's order changing custody. Linda appealed.

The Court of Appeals reversed, holding that the trial court's order of March 5, 1979, was res judicata as to all matters which *had been* or which *could have been* litigated on that date. The Court of Appeals said:

"As may be seen, there is no finding of a change of circumstances since the original custody order—in fact, finding No. 3 is to the effect that there has been no change. A reading of the trial court's oral remarks at the close of the hearing reinforces the conclusion that the order was based on a simple 'best interests' finding, and not on a 'change of circumstances' finding. The deciding factors seemed to be the mother's living style, which the trial court couldn't 'condone,' and the more commodious living quarters available in the father's house. Neither of those elements had changed since about two months before the divorce.

"Kansas law in this area appears clear to us. 'The trial court has continuing jurisdiction over custody of minor children in a divorce action and may, on proper motion and notice, change or modify any prior order of custody *when a material change in circumstances is shown.' Hardenburger v. Hardenburger,* 216 Kan. 322, Syl. ¶ 1, 532 P.2d 1106 (1975) (Emphasis added). In applying that rule, it is well settled that a decree awarding child custody is res judicata with respect to the facts existing at the time of the decree. *Simmons v. Simmons,* 223 Kan. 639, 642, 576 P.2d 589 (1978); *Lewis v. Lewis,* 217 Kan. 366, 368, 537 P.2d 204 (1975). It is immaterial that the original custody order is based on the parties' settlement agreement and not on evidence presented at a contested hearing. In *Hardman v. Hardman,* 203 Kan. 825, 827, 457 P.2d 86 (1969), the court stated:

" 'The general rule is that the court's judgment is conclusive and final as to matters and facts which were actually litigated and determined. *Not only is everything adjudicated between the parties which the parties chose to litigate, but everything incidental thereto, and which properly could have been litigated with due diligence.'* (Emphasis added.)

"*Hardman* also was an uncontested divorce in which no evidence on the fitness of either party was introduced. Yet on a subsequent motion to change custody the court held that the issue of custody *had been adjudicated* and was res judicata as to events occurring prior to the uncontested divorce, that a finding of parental fitness was inherent in the trial court's original custody order, and that evidence of predivorce occurrences was inadmissible. 203 Kan. at 827-8. The court summarized:

" 'This is a change of custody case. Inquiry is always permitted on the issue of custody when the circumstances have changed. However, the facts and circumstances embraced in the issue on which the prior order of custody rested are *res judicata.* (See *Wear v. Wear,* 130 Kan. 205, 285 Pac. 606.)

" 'The doctrine of *res judicata* applies to an order awarding custody of a minor in that a court cannot reexamine the facts formerly adjudicated and make a different order thereon. There must be a substantial change of circumstances, presenting a new case, before the court may make a substantial change in the custody order.' " 5 Kan. App. 2d at 2-3.

Grover Hill testified that he was not aware that Linda was living with Larry Holden until "around the time of the divorce." He said that he had suspicions earlier, but he denied knowledge up until that time. The trial court was not advised of the living arrangements of either party, nor was it called upon to weigh evidence and determine which parent would provide the best environment for the child and with which parent the child would receive the best care, when the default divorce was granted.

This brings us to the principal questions in this appeal: Does the doctrine of res judicata apply as strictly and with as much force in child custody proceedings as it does in other civil actions? Where a default decree is entered, and the parties are not both before the court, and where relevant and probative facts then existing are unknown to the court, may the court at a later time take those facts into consideration in determining custody? In short, and under the circumstances outlined above, does the doctrine of res judicata give way to the best interest of the child?

We have not previously considered this conflict, but find that a number of the courts of our sister states have determined the issue. In Washington, statutory law permits modification of child custody orders by a court "upon the basis of facts that have arisen since the prior decree *or that were unknown to the court at the time of the prior decree . . . .*" Wash. Rev. Code § 26.09.260. The Washington Court of Appeals in *McDaniel v. McDaniel,* 14 Wash. App. 194, 539 P.2d 699 (1975), quoted from an earlier Washington Supreme Court case, *In re Rankin,* 76

Wash. 2d 533, 536, 458 P.2d 176 (1969), where that court explained the rationale for the "unknown facts" rule as follows:

"Where a custody decree is entered upon default, the court has had no opportunity to observe the two contending parents upon the witness stand or to examine the evidence concerning their fitness and concerning the welfare of the child. It must accept the allegations of the petitioner or, at best, the uncross-examined testimony of the petitioner. Therefore, in such a case, the rule that a change of circumstances must be shown before a change of custody can be ordered does not have its usual efficacy." 14 Wash. App. at 197.

In an earlier case, *Wendland v. Wendland,* 29 Wis. 2d 145, 138 N.W.2d 185 (1965), the Supreme Court of Wisconsin said:

"We have suggested that 'the doctrine of *res judicata* is not to be applied to custody matters with the same strictness as to others.' We also have said that '[i]t is logical that the interest of the child and of the public in the child's welfare should not be concluded by the failure of the parents to bring relevant and important facts to the attention of the court.' In *Miller v. Miller* [15 Wis. 2d 583, 587, 113 N.W.2d 403 (1962)], we further said:

" 'When the question concerns the custody of the children of divorced parents, the trial judge must not be foreclosed from inquiring into matters antedating the preceding judgment. The doctrine of *res judicata* is not a complete barrier in custody matters if circumstances exist which prompt the trial judge, in his discretion to go behind the previous determination.'

"If there are facts (bearing substantially on the question of custody) existing but not disclosed to the court at the time of its original order, the court, in its discretion, should be free to receive evidence on those facts and to consider the evidence in its review of the custody order. Naturally, at the upcoming hearing the trial court will be primarily concerned with the way in which the present custody order has worked out and with the then existing fitness of the parties to have custody and what custody order is then in the best interests of the children. But in resolving the custody question, the trial court should be free to consider evidence bearing on this question that may reach back before the time of its prior order." 29 Wis. 2d at 157-158.

The Supreme Court of Idaho reached a similar result in *Stewart v. Stewart,* 86 Idaho 108, 383 P.2d 617 (1963). It said:

"Judgments affecting the custody, support and education of children, like other judgments, are conclusive upon the parties and privies, and the doctrine of res judicata is applicable thereto. 27B C.J.S. Divorce § 317 (8) b; 17A Am. Jur., Divorce & Separation, § 838; Annotation 9 A.L.R.2d § 623, et seq.

"However, the foregoing general rule is not to be applied strictly in all determinations affecting the welfare of children of divorced parents. The jurisdiction of the court continues after divorce for the protection of the welfare of such children. I.C. § 32-705. Where facts, affecting their welfare, existing at the time of the divorce or order awarding custody, are not called to the attention of the court, and particularly in default cases where the issues affecting custody have not been fully tried, the court upon a proper application may consider all facts and

circumstances, including those existing prior to and at the time of the judgment or decree, in making a subsequent determination of custody." 86 Idaho at 113-114.

Our statute, K.S.A. 1979 Supp. 60-1610($b$) provides: "In all cases involving the custody of any minor children, the court shall consider the best interests of such children to be paramount." Further, we note that where the parties have entered into a separation agreement and that agreement has been approved by the trial court and made a part of the decree, the agreement may be modified in the future *only* as to the custody, support or education of the minor children. K.S.A. 1979 Supp. 60-1610($e$).

Child custody is indeed one of the most difficult areas faced by a trial court, let alone an appellate court. A court cannot be as precise in this area as it can when dealing with tort or contract. A judgment in a tort or contract case or in most any civil case becomes final; it is over, done, completed, finished. Not so when it comes to child custody, support, and education; orders in those areas may be reopened, changed, or modified as the children grow and their needs change, the economy changes, the parents move, remarry, change jobs, change their way of life, succeed, and fail.

The rule requiring a material change in circumstances is judicially imposed. Its purpose is to prevent the relitigation of issues already presented to and determined by a trial court. The purpose of the rule is meritorious; nevertheless, it should not prevent a trial court from hearing evidence which it has not previously heard and considered, and which bears upon the principal issue: the best interests of the child. When the judicial rule prevents a trial court from considering relevant evidence which it has not heard, and from basing its decision at least in part upon that evidence, the rule conflicts with the best interest guideline established by legislative and decisional law.

We hold that, where a custody decree is entered in a default proceeding, and the facts are not substantially developed and presented to the court, the trial court may later, in its discretion, admit and consider evidence as to facts existing at the time of the earlier order, and upon the full presentation of the facts the court may enter any order which could have been made at the initial hearing whether a "change in circumstances" has since occurred or not. Our statements to the contrary in *Hardman v. Hardman,* 203 Kan. 825, 457 P.2d 86 (1969) and in the other cases cited in the Court of Appeals decision, 5 Kan. App. 2d 1, are overruled.

In the case before us, the trial judge opted, over objection, to

admit evidence of the facts as they existed at the time of the original decree. He was not previously aware of those facts. At the conclusion of the hearing he considered all of the evidence, including that disclosing the lifestyles of the parents, the suitability of their dwellings, and the stability of their homes. He found both parents fit, both willing and anxious for custody; and he found that the child's best interests would be served by awarding custody to the father.

We find no error. The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

SCHROEDER, C.J., concurring. It is unnecessary to overrule prior decisions of the Kansas Supreme Court to affirm the trial court. For the reasons hereafter assigned the res judicata doctrine has no application to the facts presented by the record herein.

Linda Hill in her testimony flaunts her immoral conduct, which she claims existed at the time the divorce petition was filed, and defends the custody challenge on the theory of res judicata. In fact, Linda's testimony is a self-indictment of unlawful conduct denounced by the laws of the State of New Mexico where she lives, and the laws of Kansas, until the repeal of K.S.A. 23-118, effective July 1, 1979. Consider also 18 U.S.C.A. § 2421, commonly known as the Mann Act, for a statement of the public policy enunciated by the Federal Congress.

The New Mexico statute, N.M. Stat. Ann. § 30-10-2 (1978) provides:

"Unlawful cohabitation consists of persons who are not married to each other cohabiting together as man and wife.

"Whoever commits unlawful cohabitation upon the first conviction shall only be warned by the judge to cease and desist such unlawful cohabitation.

"Whoever persists in committing the crime of unlawful cohabitation after being warned is guilty of a petty misdemeanor."

During the period of time concerning which Grover Hill complains of Linda's conduct, K.S.A. 23-118 was in full force and effect. It provided:

"That any persons living together as man and wife within this state without being married shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than five hundred nor more than one thousand dollars, or be imprisoned in the county jail not less than thirty days nor more than three months."

It was in the last week of April 1979 that Linda brought Brian to visit his father, Grover, and Grover was to return the boy to Linda in June 1979. Linda told Grover at the time she was going to California. When Grover definitely learned of Linda's living arrangement with Larry Holden and his brother, in a two-bedroom trailer house in Aztec, New Mexico, Grover consulted an attorney, refused to return Brian to Linda, and thereafter filed his petition for change of custody.

The trial court after hearing the evidence applied the correct rule of law and awarded custody of Brian to Grover. The issue as between parents, each of whom seek custody of their child, following divorce, turns on what the trial court considers is for the best interests of the child. K.S.A. 1979 Supp. 60-1610(*b*). It was the trial court's finding, after hearing all the evidence, that it would be in the best interest of Brian that custody be changed from Linda Hill, his mother, to his father, Grover J. Hill.

The issue in a child custody matter where the custody dispute is between one parent and a third party is the fitness of the parent to have custody. *Trompeter v. Trompeter,* 218 Kan. 535, 539, 545 P.2d 297 (1975); *Schreiner v. Schreiner,* 217 Kan. 337, 341, 537 P.2d 165 (1975); *In re Eden,* 216 Kan. 784, 786, 533 P.2d 1222 (1975); *Gardner v. Gardner,* 192 Kan. 529, 533, 389 P.2d 746 (1964).

The court in its opinion assumes the trial court's order was based on a "best interests" finding only, not a "change of circumstances" finding. The court concludes by considering the testimony of Linda that there was no change in circumstances of the parties between March, when trial was held, and August, when the motion to change custody was heard. This approach ignores several salient rules of law which should be applied on appellate review.

Where no specific findings are requested or made in a divorce action, and the trial court makes a general finding in favor of one of the parties, granting judgment to that party, such finding carries with it as established all facts necessary to support the judgment, and the appellate court will not weigh the evidence where the general finding is supported by substantial testimony. *Gardner v. Gardner,* 192 Kan. at 531.

In the instant case no specific findings were requested or made. The trial court simply made a general finding in accordance with

the statutory mandate to determine what was in the best interest of the child in awarding a judgment of custody to the father. That general finding carried with it as established all facts necessary to support the custody award, and the Supreme Court should not weigh the evidence because the general finding is supported by substantial testimony.

My position herein is two-pronged. First, there is sufficient evidence to support a specific finding by the trial court, which inheres in the judgment, that a change in circumstances occurred between the original judgment in the divorce action awarding custody to Linda, and the filing of the petition for change of custody. Second, assuming arguendo there was no change in circumstances, the exception to the doctrine of res judicata applied by the Court of Appeals must prevail in reviewing the record herein. That is, where it can be shown that the facts existing at the time of and since the original hearing have an adverse and detrimental effect upon the physical, mental or emotional health or development of the child, then the doctrine of res judicata is relaxed and bows to the cardinal and polestar principle that in matters of custody, the welfare of the child is paramount. *Hoffman v. Hoffman,* 228 Kan. 290, 613 P.2d 1356 (1980).

On the first point, the evidence most favorable to the trial court's judgment is that Grover, at best, only suspected that his wife was cohabiting with another man at the time of the divorce. The divorce decree was entered in a default hearing, wherein Linda did not appear, and on the ground of incompatibility. Obviously, with a total absence of evidence the trial judge knew nothing of the circumstances under which Linda was living, when the divorce was granted and the custody order was entered. Furthermore, assuming Grover knew more, he had the right to expect Linda to marry her paramour as soon as she was free to do so. The divorce gave rise to a new event affecting the circumstances. But Linda's remarriage did not develop, and this gave rise to changed circumstances when Linda was free to marry but refused to do so.

The public policy in Kansas favors marriages. *Schuchart v. Schuchart,* 61 Kan. 597, 60 Pac. 311 (1900). The existence of an unlawful cohabitation statute throughout the history of Kansas, and throughout the period in question in this custody fight,

reaffirms the existence of the public policy of the state. It is inferentially reaffirmed by the legislative enactments in Article 16, Chapter 60, of the Kansas Statutes. In particular, consider the legislative admonition in K.S.A. 1979 Supp. 60-1608.

The Court of Appeals imposition of an obligation on Grover to conduct discovery and ascertain all the facts, under the penalty of its application of the res judicata theory, where Linda had removed herself to a distant state, is unrealistic. It imposes an undue burden of litigation expense on our citizens which our court is administratively trying to correct and overcome. It also forces on married couples who find it necessary to seek a divorce the obligation to charge the most serious marital violations against one another, when the divorce action is filed and tried. This not only creates more strife and bitterness between the parents, but has an adverse effect on the children of a broken home, who must bear the burden of such publicity and the bitterness created between their parents.

Conduct denounced by the Kansas legislature as warranting criminal proceedings has never been countenanced by our Kansas Supreme Court, except possibly in *Fleming v. Fleming,* 221 Kan. 290, 559 P.2d 329, 98 A.L.R.3d 445, 453 (1977), where I dissented.

The assertion of my second point to uphold the judgment of the trial court is apparently one the court attempts to avoid by its decision herein. On the facts in this case, the res judicata doctrine applied by the Court of Appeals must bow.

Under our constitutional form of government, which all judges of the state have taken an oath to uphold at both the state and national levels, the members of the legislature representing the people enact laws which declare conduct denounced as criminal. Prosecuting attorneys are charged with the obligation in upholding the constitution to prosecute violations to the full extent of the law. Dereliction on their part to enforce a given enactment, at their will, does not give rise to an acceptable situation in our society upon which courts can rely. For example, if a defendant convicted for having violated K.S.A. 23-118, prior to its repeal, appealed to the Supreme Court seeking to set aside the conviction, on the ground that two and one-half million people in the United States live in "unmarried-couple households," the members of the court could not set aside the conviction and uphold

their oath of office. See U.S. Bureau of the Census, Series P-20, No. 350, Population Profile of the United States: 1979, p. 8 (1980).

On the facts in this case it is clear that Linda's conduct offends prevailing public policy. The logical conclusion of Linda's argument in seeking to overturn the judgment of the trial court is that the statutory prohibitions of New Mexico and Kansas are void as to those who believe the proscribed acts are not immoral, or, for one reason or another need not be respected. The argument, of course, defeats itself. The laws which our society enacts for the governance of its members are not limited to those who agree with them. They are equally binding on the dissenters. Conduct of the nature flaunted by Linda in defense of this custody battle, when it is open, as here, not only violates the statutorily expressed moral standards of the State of New Mexico, where Linda lived with her child, and of the Kansas statute prior to July 1, 1979, but also encourages others to violate those standards, and debases public morality.

Linda's disregard for existing standards of conduct instructs her child, by example, that he, too, may ignore them and could well encourage him to engage in similar activity in the future. That factor supports the trial court's conclusion that it was in the best interest of the child to change custody—that the daily presence of that environment was injurious to the moral well-being and development of the child.

Under Kansas cases the trial court need not find that the child has suffered actual tangible harm. The statute directs: "In all cases involving the custody of any minor children, the court shall consider the best interests of such children to be paramount." K.S.A. 1979 Supp. 60-1610(*b*).

The *Hoffman* case supports the decision of the trial court changing custody herein. The only difference is that the factual situation here presented was not before the court in that case.

A recent decision by the Illinois Supreme Court is on all fours with our case herein. *Jarrett v. Jarrett,* 78 Ill. 2d 337, 400 N.E.2d 421 (1979), *cert. denied* _____ U.S. _____ (1980) (three dissenting members). The court there held:

"Where a parent having custody of her minor children by a prior marriage cohabits with an individual of the opposite sex and has no present intention to marry such individual, there is a disregard by the parent for existing standards of conduct in Illinois, which disregard instructs the children, by example, that they, too, may ignore existing standards of conduct, and that factor supports a trial court

conclusion that the children's daily presence in that environment is injurious to the moral well-being and development of the children." (Syl. ¶ 12.)

It is respectfully submitted the judgment of the trial court should be affirmed by meeting the issue presented head-on, without overruling prior Kansas case law. I agree the judgment of the trial court should be affirmed and the judgment of the Court of Appeals should be reversed.