BETTY L. VERNON *v.* RAYMOND M. VERNON

[No. 246, September Term, 1975.]

*Decided March 24, 1976.*

The cause was argued before ORTH, C. J., and POWERS and MASON, JJ.

*Nelson M. Oneglia* for appellant-cross-appellee.

*Morris Topf,* with whom were *Stanbury & Topf* on the brief, for appellee-cross-appellant.

MASON, J., delivered the opinion of the Court.

This case concerns the custody of Charles (Chipper) Vernon who is presently fourteen years old. His parents, Betty L. Vernon, (mother) and Raymond M. Vernon (father) were married in 1951. This marriage produced three children, two of whom have now reached the age of majority. The parties were separated in 1971 and in 1973 the husband obtained a divorce on the grounds of his wife's adultery. At the time the divorce was granted, August 20, 1973, the chancellor found that the wife's transgressions had not continued and that she was a fit and proper person to continue custody of the children.

In less than a year, May, 1974, the father petitioned for a modification of custody. The hearing was held in the Circuit Court for Prince George's County in August, 1974, before a different chancellor than the one who had heard the divorce proceedings and had made the original award of custody to the wife. At the conclusion of this hearing, the chancellor reserved judgment and directed the Department of Juvenile Services and a staff psychologist of the court to submit reports on the fitness of the parents. Both reports recommended that the mother retain custody of the children, although they stated that either parent was capable of providing a good home.

At the disposition hearing, held in February, 1975, the chancellor denied the husband's motions, (1) that the psychologist's report not be received and (2) that an evidentiary hearing be held in order that the psychologist could be cross-examined. The chancellor, contrary to the recommendations of the submitted reports, awarded custody of the child to the father. From this order, the mother filed an appeal and the father filed a cross-appeal on the basis that the chancellor erred in denying his motion *ne recipiatur* and his motion for an evidentiary hearing. Since the decision of the chancellor was contrary to the recommendation of the

psychologist's report, and the custody of the child was awarded to the father, it is not necessary to answer the issues raised on cross-appeal by the father.[1]

We next consider whether there was sufficient evidence to justify the change of custody of the child from his mother to his father. In Maryland, the overriding and determinative factor regarding the custody of minor children is the best interest of the child. *Kauten v. Kauten*, 257 Md. 10, 261 A. 2d 759 (1970); *Hild v. Hild*, 221 Md. 349, 157 A. 2d 442 (1959); *Cooke v. Cooke*, 21 Md. App. 376, 319 A. 2d 841 (1974). It is also an established principle that the custody of children should not be disturbed unless there is a strong reason which affects the welfare of the child. *Krebs v. Krebs*, 255 Md. 264, 257 A. 2d 428 (1969); *Winter v. Crowley*, 231 Md. 323, 190 A. 2d 87 (1963); *Kramer v. Kramer*, 26 Md. App. 620, 339 A. 2d 328 (1975); *Sullivan v. Auslaender*, 12 Md. App. 1, 276 A. 2d 698 (1971). "To justify a change in custody, the change in conditions upon which it is based must be one affecting the welfare of the child and not of the parent. . . . Custody should usually be changed only where . . . it appears advisable for the good of the child." *Winter v. Crowley, supra,* 331. A determination of custody should emphasize changes in the circumstances of the child which have occurred since the last hearing. *Hardisty v. Salerno*, 255 Md. 436, 258 A. 2d 209 (1969); *Cornwell v. Cornwell*, 244 Md. 674, 224 A. 2d 870 (1966).

In custody cases this Court is not restricted to the "clearly erroneous" standard set forth in Maryland Rule 1086, but will exercise "its own sound discretion" in determining whether the conclusion of the chancellor was in the best interest of the child. *Kramer v. Kramer, supra; Cooke v. Cooke, supra; Kirstukas v. Kirstukas*, 14 Md. App. 190, 286 A. 2d 535 (1972).

As previously stated, the custody of a child should not be disturbed except for strong reasons which affect the child's welfare. The father, as moving party, had the burden of

---

1. The chancellor did not consider the psychologist's report in reaching his decision and neither shall we.

persuasion to show that such reasons existed. A review of the record fails to establish the existence of such a change in circumstances.

The father alleged and sought to prove that the environment provided by the mother was detrimental to Charles because: (1) Charles was permitted to drink beer and was in the habit of drinking beer during his school lunch hour; (2) Charles was involved in fights with his brothers; (3) the mother encouraged the boy to sneak into sporting events and concerts without paying; (4) Charles had been truant from school; (5) Charles had been involved in a shoplifting incident; (6) Charles had been rowdy in his neighborhood by throwing snowballs and shooting his BB rifle at a neighbor's house; and (7) the mother often left the boy unsupervised late at night and for extended periods of time.

The evidence presented at the hearing did not support these allegations in any substantial way. First, the evidence showed that the mother did not drink, and that the beer drinking itself consisted of isolated instances of experimentation, i.e., taking a couple sips of beer. As to fights with his brothers, the only fighting occurred when Mike, the oldest brother, struck Charles for misbehaving, causing his nose to bleed. Regarding the claim that the mother encouraged Charles to sneak into sporting events without paying, there was evidence that Charles was admitted into the Bullet basketball games without paying with the tacit approval of an employee of the arena. This resulted after the mother was unsuccessful in obtaining an additional season ticket for Charles. As to truancy, Charles was truant from school only one day for which he was suspended, reprimanded and given counseling. In regard to the shoplifting incident, there was no evidence that Charles was anything but an innocent bystander. As to the snowball throwing incident, all of the boys in the neighborhood were involved, and for his part in it, Charles was reprimanded. Additionally, the witness who complained that someone had shot at his house with a BB rifle did not identify Charles as the person who had done the shooting. Finally, when the

mother was not at home, Charles was supervised by the oldest brother, Mike, or a neighbor.

It is manifest that the incidents relied on to prove that the environment provided by the mother was detrimental to Charles were insubstantial. In addition, these incidents were not so related to each other as to indicate a pattern of delinquent behavior. Even a model parent could hardly prevent the occurrence of similar happenings. Under the circumstances, we do not think that the combined weight of these incidents reflects so negatively upon Charles's welfare as to justify an uprooting from the home environment he has known since infancy.

We are aware that appellate courts must give weight to the findings of fact reached by the chancellor, for it is he who had the opportunity to view the parties and the witnesses in the flesh and to judge their demeanor and credibility. *Kauten v. Kauten, supra.* While we are not bound by Rule 1086 in regard to the chancellor's conclusion as to custody, the "clearly erroneous" standard does apply to findings of fact below. *Winter v. Crowley, supra.* Significantly, the chancellor below entered no formal findings of fact. In reaching his decision, the chancellor did state:

> I have struggled with the case. However, on balance, and despite what the Court psychologist and Juvenile Services have recommended, I have a feeling in my heart, where it comes from, that Chipper would be better off with his father. Accordingly, the Court will grant the relief prayed for in the petition. That is to say that the custody of Chipper will be given to his father with all reasonable visitation rights granted to the mother.

With due regard for the chancellor's discretion, we cannot agree that a feeling from the heart, in the absence of supporting evidence, is a legally sufficient reason for ordering a change in custody.

Therefore, we hold that the decision below to grant

custody to the father was not in the best interests of Charles. The judgment below is hereby reversed and the case is remanded for an order awarding custody to the mother with all reasonable visitation rights to the father.

> *Order reversed.*
>
> *Case remanded for an order in accordance with this opinion.*
>
> *Costs to be paid by appellee and cross-appellant.*