# JOSEPH A. McANDREW *v.* DOROTHY J. McANDREW

[No. 564, September Term, 1977.]

*Decided February 28, 1978.*

The cause was argued before MELVIN, LISS and WILNER, JJ.

*Joseph A. Lynott, Jr.,* for appellant.

*Nelson M. Oneglia,* with whom were *Horowitz, Oneglia, Goldstein & Foran, P.A.* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

The appellant, Joseph McAndrew (hereinafter, the husband), is an engineer employed by the RCA Corporation. His wife Dorothy, appellee (hereinafter, the wife), is a

guidance counselor with the Prince George's County school system. The parties were married in Scranton, Pennsylvania on August 6, 1966 and shortly thereafter moved to Prince George's County. In May 1971 the parties purchased a home in Oxon Hill, Maryland and resided there until their separation in 1976. The parties had no children of their own and adopted a minor child, Collean, who is now five years of age. On February 18, 1976 Mrs. McAndrew, without prior notice to her husband, moved out of the house, taking Collean and most of the furniture with her and moved into an apartment. The wife informed the husband where she and the child were and arranged for the husband to visit with the child over the weekend. During the ensuing week the husband took Collean from the baby-sitter and secreted her in Pennsylvania. At the trial, the wife testified that she felt it was in the child's best interest "not to be grabbed back and forth" and she permitted the child to remain with the father until trial.

On February 26, 1976 the husband filed a bill of complaint in the Circuit Court for Prince George's County seeking custody of Collean. The wife filed a cross-bill of complaint praying custody, support and maintenance. After a hearing before a master for domestic relations causes for Prince George's County on September 10, 1976, it was recommended that custody *pendente lite* be awarded to the husband. An order to that effect, also establishing specific visitation privileges, was signed by the chancellor on October 14, 1976.

The case came on for trial on January 19, 1977, and numerous witnesses were presented by both the husband and the wife. Voluminous testimony was taken. At the conclusion of the testimony the chancellor ordered an investigation be made by the Juvenile Court Services Division of the county. Pending receipt of the report and a subsequent hearing to be scheduled, the chancellor ordered that the child remain in the husband's custody. The report was received in April, 1977 and oral argument was held before the chancellor on May 5, 1977. At that time, the chancellor proceeded to render an oral

opinion in which he expressed his factual and legal conclusions as follows:

"Now, the ball is in the court's lap, what to do with it. Let me comment first, this is the most difficult custody case this member of the bench has had to deal with. Normally in these cases we're able to analyze the evidence before us and find a bad situation on one side and a better situation on the other, or in that area. Here, frankly, the court finds it very difficult to find anything significantly bad on either side.

"So here we have a child who admittedly is in the hands of its adopted father initially because he took the initiative and took the child without having gone through the judicial process and then later on a *pendente lite* matter. I would have to agree with Mr. Whitaker, the Master. This was not definitive placement of custody. But I could conclude that it was commendable that he took this attitude, one of calm, if you will, stability. But I don't view this case as a case where truly after a full hearing, custody has been granted to one parent or the other by the court and shortly thereafter there is a petition to change the custody . . . .

"I don't believe in this case I'm bound by the same criteria the Court of Special Appeals told me I should have been bound by in the *Vernon* [*v. Vernon,* 30 Md. App. 564, 354 A. 2d 222 (1976)] case, to wit a changed position. I will not apply that rule in this case. We all recognize, gentlemen, the rules to follow. Two significant rules in this case are not what the parents feel, not what the parents want, not what the parents would like but what in the Court's judgment is in the best interest or in the better interest, in this case, truly for the child.

"We know from other cases that there is a presumption in favor of the maternal side when everything else is equal and that is very significant

4

as Judge Moylan [sic] stated in *Cooke* [*v. Cooke,* 21 Md. App. 376, 319 A. 2d 841 (1974)], a fairly recent case . . . . That presumption has no bearing in the decision making process until the Court has reached the position where truly everything is even-steven on both sides. It's only then you bring that into play.

"Well, I have reviewed my notes, and I took copious notes, gentlemen, and I read your memoranda and I've read the report and in balancing everything else, as I said, this is the most difficult custody case I've been exposed to. I think the matter is an even-steven situation. I think balancing everything out, my mind is in a state of equipoise, if you will, and being in a state of equipoise, I will accordingly award custody of this child to Mrs. McAndrew."

The maternal preference principle is a comparatively recent development in the law of custody of minor children, having its genesis in the latter part of the last century. Under the early English common law the father had the absolute right to custody regardless of the welfare of the child.[1] That preeminent right was recognized by the colonial courts but its raison d'être was based on the father's responsibility to furnish discipline and support. The courts maintained the right of the state to interfere in those instances in which the parent failed to execute his duties properly and reserved the right to appoint a guardian where necessary for the protection and welfare of the child. Maryland has long since abandoned the concept of the child as parental property, and the equity courts of this state have exercised their jurisdiction "with the paramount purpose in view of serving the welfare and promoting the best interests of the children." *Ross v. Hoffman,* 280 Md. 172, 175, 372 A. 2d 582 (1977) and cases there cited. As was stated by the Court of Appeals in *Butler v. Perry,* 210 Md. 332, 342, 123 A. 2d 453 (1956), "it is too

1. An excellent discussion of the development of child custody law was recently written by Chief Judge Gilbert of this Court in Montgomery County Dept. of Social Services v. Sanders, 38 Md. App. 406, 381 A. 2d 1154 (1978).

elementary to be stressed that the welfare of the child is the controlling test in a custody case."

Maryland, however, joined a majority of the other states in swinging even further from the common law principle that the *pater familias* had an absolute right to custody and adopted the position that the interest of young children, particularly females, ordinarily is best served when they are placed in the custody of their mother. The rationale for this principle was that the mother was the natural custodian of her young and that her love for her child is irreplaceable.[2] In some of the states the reasons for the adoption of the rule were stated in almost lyrical poetic terms.[3]

As the principle evolved, some of the states gave statutory recognition to the maternal preference principle by adopting laws which stated the preference in favor of the mother.[4] The majority of jurisdictions continue to follow the rule that the mother is the preferred party in matters of custody.[5] Other states, including Maryland, enacted statutes which stated that neither parent has any rights superior to the rights of the other in child custody matters.[6] However, the Court of Appeals continued to recognize the maternal preference principle without considering the possible effect of Article 72A, § 1 of the Maryland Code which proscribed the preferring of either party in a custody dispute.[7] This was the

2. Annot., 70 A.L.R.3d 262, 267-68 (1976).

3. In Bath v. Bath, 150 Neb. 591, 35 N.W.2d 509 (1949), it was observed that because the love, solicitude and devotion of a mother cannot be replaced by another, and is worth more to a child of tender years than all other things combined, a child should not be deprived of the necessary and wholesome influences of these characteristics of a mother if it can be reasonably avoided. In Hines v. Hines, 192 Iowa 569, 185 N. W. 91 (1921) the court observed that the natural inclination to give to the mother the custody of her children of tender years is a recognition that the mother is God's own institution for the rearing and upbringing of the child, and puts a premium on child culture in the hands of an expert.

4. Annot., 70 A.L.R.3d at 293-97.

5. *Id.* at 268.

6. *Id.* at 297-301; Maryland Code (1957, 1977 Cum. Supp.) Art. 72A, § 1.

7. Article 72A, "Parent and Child," was added to the Maryland Code by Chapter 561 of the 1929 Laws of Maryland and took effect as of June 1, 1929. Despite its mandate that "[The parents] shall have equal powers and duties, and neither parent has any right superior to the right of the other concerning the child's custody," the Court of Appeals continued to recognize the maternal preference principle. *See* Hild v. Hild, 221 Md. 349, 157 A. 2d 442 (1960); Oliver v. Oliver, 217 Md. 222, 140 A. 2d 908 (1958); Trudeau v. Trudeau, 204 Md. 214, 103 A. 2d 563 (1954).

state of the law when we had before us the case of *Kirstukas v. Kirstukas*, 14 Md. App. 190, 286 A. 2d 535 (1972).

In that case, Judge Moylan recognized the continued viability of the maternal preference principle by quoting from *Hild v. Hild*, 221 Md. 349, 357, 157 A. 2d 442 (1960):

> " 'Since the mother is the natural custodian of the young and immature, custody is ordinarily awarded to her, at least temporarily, in legal contests between parents when other things are equal, even when the father is without fault, provided the mother is a fit and proper person to have custody.'
>
> "See also 2 Nelson, *Divorce and Annulment,* Section 15.09 (2d ed., 1945); *Kauten v. Kauten,* 257 Md. 10; *Oberlander v. Oberlander,* 256 Md. 672; *Cornwell v. Cornwell,* 244 Md. 674; *Palmer v. Palmer,* 238 Md. 327; *Sellman v. Sellman,* 236 Md. 1; *Wallis v. Wallis,* 235 Md. 33; *Parker v. Parker,* 222 Md. 69; *Oliver v. Oliver,* 217 Md. 222; *Roussey v. Roussey,* 210 Md. 261; *Townsend v. Townsend,* 205 Md. 591; *Trudeau v. Trudeau,* 204 Md. 214; *Porter v. Porter,* 168 Md. 296; *Barnett v. Barnett,* 144 Md. 184; *Levering v. Levering,* 16 Md. 213; *Mullinix v. Mullinix,* 12 Md. App. 402; *Widdoes v. Widdoes,* 12 Md. App. 225; *Myers v. Butler,* 10 Md. App. 315." 14 Md. App. at 194.

Judge Moylan concluded that the principal factual determination to be made by the chancellor in a custody case concerned what was in the best interest of the child but that in reaching this determination the maternal preference was a valid factor to be placed in the balance scale. He stated at 196,

> "The so called 'preference' for the mother as the custodian particularly of younger children is simply a recognition by the law, as well as by the commonality of man, of the universal verity that the

maternal tie is so primordial that it should not lightly be severed or attenuated. The appreciation of this visceral bond between mother and child will always be placed upon the balance scales, and all else being equal or nearly so, will tilt them. As heavy a factor as it may be, however, it is still but a factor. Every statement of the preference is hedged about by the context 'all else being equal.' If, after giving due weight to the maternal preference, the scales nonetheless demonstrate the better suitability of the father or, indeed, of some third person to serve the interests of the child, the path for the chancellor is clearly indicated. The 'better interests' of the child is always the paramount consideration."

*See* Nelson, *Divorce and Annulment,* § 15.09 (2d ed. 1945).

*Kirstukas, supra,* was modified somewhat in *Cooke v. Cooke, supra,* where Judge Lowe of this Court pointed out that it was only when all else was equal that the maternal preference rule was to be applied. He noted that the Maryland Constitution was recently amended by the addition of Art. 46 of the Declaration of Rights, the Equal Rights Amendment (E.R.A.), which provides that "Equality of rights under the law should not be abridged or denied because of sex." Since the applicability of the E.R.A. was neither raised nor argued before this Court in *Cooke,* we declined to consider that case *vis à vis* the amendment while "acknowledging that we do so in its shadow." *Id.* at 379. Looking only to the basic principle of equality, Judge Lowe stated that the maternal preference must be exercised within certain restrictions. He concluded that the maternal preference principle was intended to be used only for the limited function of serving as a tie-breaker and that the child's best interest was the measure by which the issue of custody was to be decided. He stated at 380,

"We concede that it is unlikely that litigants will have parental qualities so equally balanced that resort to the maternal preference will be necessary. It should therefore not be expressed as a

consideration at all, except in those limited instances where it would be impossible to decide upon the evidentiary facts."

In this case we are called upon to decide whether in the light of the present state of the law we may continue to adhere to our previous conclusion that the maternal preference principle is a viable tool to be utilized as a tie-breaker in child custody cases. The determining factor in this decision is a 1974 amendment to Article 72A, Sec. 1, in which the Legislature made explicit its desire that "in any custody proceeding, neither parent shall be given preference solely because of his or her sex." [8] The title to that Act states:

"AN ACT concerning
Custody of Children — No Preference to Either Spouse for the purpose of providing that neither spouse shall be given preference because of sex in a court custody proceeding."

At the time this Act was passed, there was no preference of either spouse in a custody proceeding, based on sex, other than the maternal preference. It was, therefore, that maternal preference, being the only sex based preference then established in the law, that the General Assembly intended to abolish. Unless the 1974 amendment had that effect, it had none at all; and we will not presume that the Legislature intended to enact a meaningless statute in so important an area. Accordingly, we conclude that, since July 1, 1974, the maternal preference has been abolished by statute in child custody cases.[9]

This is not to suggest that the best interests of the child may not require a consideration of the biological and psychological differences between the parents (or other potential custodians) to the extent that they bear upon their ability to provide the care needed by the child at the time. The

8. Laws of Maryland, 1974, ch. 181, effective July 1, 1974 (some five weeks after our decision in Cooke).

9. Appellant, below and on appeal, raised the issue of the effect of the Maryland Equal Rights Amendment on the maternal preference principle in custody cases. We do not reach the issue here since we conclude that Art. 72A, Sec. 1 is dispositive of this case.

inquiry here must concern the needs of the particular child and each of the parties' relationship with the child. A parent is no longer presumed to be clothed with or to lack a particular attribute merely because that parent is male or female.

To the extent that we postulated in *Cooke* that a preference of any type could be a tie-breaker, we disaffirm that theory. Our choice of that term in retrospect, like the use of the term maternal preference, was ill advised. There can be no tie-breaker in a custody case because, as we indicated in *Cooke, supra,* there should never be a tie. The determination of custody is an area in which discretion is vested in a judge and in which appellate review of his exercise of that discretion is limited. *Davis v. Davis,* 280 Md. 119, 372 A. 2d 231 (1977); *Ross v. Hoffman, supra.* He has at his command not only the evidence offered by the parties but a full panoply of social service and other extrajudicial agency resources. From all of that he is required to make a decision. If, in a petition for modification, he is unable to conclude that custody should be changed, then it ought not to be changed. *Vernon v. Vernon, supra.* This is nothing more than a recognition of the principle that a person seeking some court action has the burden of showing why the court should take that action, and that, if he fails to meet that burden, whatever it is, the action should not be taken.

We conclude that the chancellor, in this case, erred in applying the heretofore recognized maternal preference principle. We are required to remand the case for further proceedings. We express no opinion as to the ultimate determination of the controversy as we perceive that additional information will undoubtedly be available to the chancellor when the issue of custody of this child is again considered.

> *Order awarding custody to appellee vacated; remanded for further proceedings in conformance with views expressed herein.*
> *Costs to abide result.*