(623 P.2d 546)

No. 51,159

ROBERT G. GRUBBS, *Plaintiff-Appellant,* v. LILA K. GRUBBS, *Defendant-Appellee.*

Petition for review denied April 29, 1981.

Opinion filed February 13, 1981.

*Christopher Randall,* of Turner & Boisseau, of Wichita, for the appellant.

*William C. Rein,* of Larned, for the appellee.

Before FOTH, C.J., MEYER, J., and HARRY G. MILLER, District Judge Retired, sitting by designation.

FOTH, C.J.: In this divorce case the only issue on appeal is whether the trial court improperly applied the "tender years" doctrine in awarding custody of the parties' two-year-old son to the defendant-appellee mother.

At trial the husband's evidence on the custody issue was largely devoted to an attempt to show that the wife was unfit. To this end he produced witnesses who testified about defendant's performance of her job at Larned State Hospital, and in particular about a letter she wrote to a former patient; her smoking of marijuana; her leaving the boy with a baby sitter overnight without warning, and without adequate emergency instructions; and her giving him some beer at 10:00 o'clock one night in a tavern. He also urged that the joint custody arrangement existing while the case was pending should be terminated. Defendant's evidence went largely to rebut that of plaintiff's: her job ratings were excellent; her marijuana use was infrequent; the beer incident was an

isolated occasion. She did not attack plaintiff's fitness except to secure an admission from him that he also had smoked marijuana—although he said he quit when the parties were married.

The trial court discounted both parents' alleged shortcomings as trivial, found both parents fit, and awarded custody to the mother on the following reasoning.

"For many years in Kansas there was a legal principle known as, 'The Tender Age Doctrine' which basically says that generally speaking children of tender age should be placed in the custody of their mother, if for no other reason than for the most part she is more available to take care of their needs. Several years ago the Legislature abolished that, and *the law is that you should place the children wherever it is in their best interest. Now I recognize the law, but nonetheless there was a great deal of common sense behind the concept that a mother, if she is not unfit, generally is more needed by a two-year old child than a father. And, I think in this case that at this age and at this time in the child's life that the mother is the more appropriate person to have custody.*" (Emphasis added.)

The husband does not quarrel with the finding of fitness, but does say that by even considering the tender years doctrine the trial court (1) violated K.S.A. 1980 Supp. 60-1610(*b*), (2) placed an undue burden of proof upon him, and (3) deprived him of the equal protection of the law.

The last argument need not be considered by us because it was not raised below. *Malone v. University of Kansas Medical Center,* 220 Kan. 371, Syl. ¶ 1, 552 P.2d 885 (1976). On the other two issues we conclude the trial court gave the doctrine no more weight than it was entitled under the present state of the law in Kansas.

The history of the doctrine in Kansas is recounted in Peck, *The Tender Years Doctrine in Kansas Child Custody Cases,* 49 J.K.B.A. 23 (1980). It need not be repeated here. Suffice it to say that in cases since *St. Clair v. St. Clair,* 211 Kan. 468, 507 P.2d 206 (1973) our Supreme Court has made clear that the age of the child is but one factor to be considered in determining what is in the "best interests" of the child. As Professor Peck aptly puts it:

"The gist of these recent cases is that the best interest test and not the tender years doctrine is now the paramount test. The tender years doctrine is not on equal status with the best interest test; rather, in deciding what is in the best interests of the children, one factor to consider and to give weight is the tender age of the children and the necessity for maternal love—but it is not an absolute rule that tender aged children should always go to their mothers." 49 J.K.B.A. at 26.

In *Neis v. Neis,* 3 Kan. App. 2d 589, 599 P.2d 305 (1979), this

court made its own survey of recent Supreme Court decisions and reached the same conclusion.

Peck also concludes that the 1976 amendment to our divorce laws adding what is now K.S.A. 1980 Supp. 60-1610(*b*) did not clearly "abolish" the doctrine, but merely restated the test as it had developed in our case law. The statute provides:

"In all cases involving the custody of any minor children, the court shall consider the best interests of such children to be paramount. Where parental rights have not been terminated, neither parent shall be considered to have a vested interest in the custody of any such child as against the other parent, regardless of the age of the child . . . ."

The first portion merely adopts the "best interests" test currently being applied by the courts. As to the "vested interest" clause, Peck observes:

"But has either party ever had a *vested* interest as against the other party? The mother, all other things being equal, has had a presumption or preference which in certain cases resulted in giving her custody of tender aged children, but she has never had a vested right as against the father. 'Vested' implies that the right is settled and not subject to defeasance. Custody rights are never totally vested. A person having previously been awarded custody in the divorce hearing may lose custody to his or her X-spouse in a modification hearing. Or a parent may lose custody if the state finds that the child is 'deprived,' or that parental rights should be terminated. So, saying neither party has a vested custody interest as against the other party is not saying anything new." 49 J.K.B.A. at 28.

The author also notes that subsequent bills designed specifically to abolish the present vestiges of the doctrine have failed of passage. The proper test, as we read the statute and existing case law, is that found in *Patton v. Patton,* 215 Kan. 377, 379, 524 P.2d 709 (1974):

"Thus the real issue is which parent will do a better job of rearing the children and provide the better home environment. Where the evidence on that issue is in balance, tender age of the children will normally tip the scales in favor of the mother, simply because in most cases she is more available in the home."

That appears to us to have been the test actually employed by the trial court in this case.

We recognize that in other states legislation has abolished *any* preference for the mother. Thus, in *Cooke v. Cooke,* 21 Md. App. 376, 319 A.2d 841 (1974), the court had held that maternal preference could be a "tie-breaker" in a custody case, all other things being equal. (In essence, the state of Kansas law today as we perceive it.) Then, in *McAndrew v. McAndrew,* 39 Md. App. 1,

8, 382 A.2d 1081 (1978), the same court took note of subsequent legislation whose express purpose was to provide that "neither spouse shall be given preference because of sex in a court custody proceeding." Such legislation, the court concluded, could only have been aimed at the "tie-breaker" role recognized in *Cooke.* The court went on to say that in custody cases there should never be a tie; the trial court through its own resources should be able to garner sufficient information to make a custody choice without relying on sex-based factors.

There are two reasons we deem such a rule inapplicable here. First, like Professor Peck, we cannot read our statute as doing anything more than establishing the "best interests" test heretofore recognized by our Supreme Court; the age of the child and need for maternal care are merely factors to be considered in reaching that ultimate conclusion. Where the father has been shown to be the better parent Kansas courts have not hesitated to award him custody. *E.g., Lewis v. Lewis,* 217 Kan. 366, 537 P.2d 204 (1975); *Schreiner v. Schreiner,* 217 Kan. 337, 537 P.2d 165 (1975); *Dalton v. Dalton,* 214 Kan. 805, 522 P.2d 378 (1974).

Second, this, like all such cases in Kansas, was tried as an adversary proceeding. Each party introduced only the evidence it deemed relevant to its theory of the case; neither went into detail on the relative skills of the parties in child-rearing. The court did not, and without stipulation probably could not, conduct an independent inquiry such as is envisioned under Maryland procedure. With the evidence in balance in the trial court's eyes, it was nevertheless required to make a decision. In doing so, it considered the age of the child and its need for maternal care as tipping the balance. Under accepted rules of appellate review we cannot upset such a decision in the absence of an abuse of discretion. *Simmons v. Simmons,* 223 Kan. 639, 643, 576 P.2d 589 (1978). We cannot find such an abuse here.

Affirmed.