LEE, District Judge,
concurring in part and dissenting in part:
Two issues are before the Court. First, whether a reasonable personnel official in Mullineaux’s position and with her experience would have known in 1994 that it was unlawful to apply a gender neutral child nurturing leave law in a discriminatory manner by basing a decision with respect to employment benefits on gender stereotypes. Second, whether the trial court abused its discretion in finding that the clear weight of the evidence supported the jury’s verdict of $375,000 for Trooper Rnussman’s emotional distress and time lost with his newborn daughter.
The Majority concludes that Mullineaux was not entitled to qualified immunity on the grounds that her interpretation of the state policy on nurturing leave was a byproduct of gender stereotypes about a woman’s role in child rearing. I agree with the Majority’s conclusion that Mulli-neaux is not entitled to qualified immunity; however, I write separately to stress the fact that Mullineaux is not entitled to qualified immunity because she engaged in the-discriminatory application of a gender neutral statute. The Majority concludes further that the district court abused its discretion in upholding the $375,000 jury verdict because the Majority’s review of the record revealed that the nexus between the constitutional injury and the evidence presented on damages was “attenuated at best.” I dissent from this portion of the Majority’s Opinion because in reaching its conclusion the Majority creates a new standard of review for causation and a jury award that is amorphous and impossible to maintain. The district court did not abuse its discretion in finding that the weight of the evidence submitted supported the $375,000 verdict. Accordingly, I would affirm the district court’s decision in its entirety.
I.
Mullineaux is not entitled to qualified immunity because a reasonable personnel official in Mullineaux’s position, and with her experience, would have known in 1994 that the law is clearly established that it is unlawful to administer a gender neutral leave law in a discriminatory manner and to base her decision with respect to employment benefits on an employee’s gender. Appellate review of a trial court’s decision that a party is not entitled to qualified immunity is a matter of law and is subject to de novo review. See, e.g., Winfield v. Bass, 106 F.3d 525, 529 (4th Cir.1997). As the Majority clearly states, the Supreme Court formulated a two-prong test to determine whether qualified immunity shields a public official from civil liability. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under the first prong, the court must identify the constitutional right at issue and determine whether that right was clearly established at the time of the alleged infringement. See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Under the second prong, the court must determine whether a reasonable officer would have known he violated such right. See Wilson, 526 U.S. at 614-15, 119 S.Ct. 1692.
A.
The Majority states that the constitutional right at issue is whether the law was clearly established that the equal protection clause prohibited a state agency from permitting only mothers, never fathers, to take child-nurturing leave benefits available to the primary care giver for a new *644 born. However, framing the issue in such a manner minimizes and miseharacterizes the nature of the unconstitutional actions at issue. Knussman approached Mulli-neaux, in her capacity as the Manager of Medical Leave Benefits, to inquire about Maryland’s newly promulgated leave law that allowed primary care givers of newborn or adopted children to use accrued sick leave, without certification of illness or disability. The law allowed up to 30 days leave for primary care givers, and ten days leave for secondary care givers. See MD. CODE ANN., STATE PERS. & PENS. § 7-508 (1994). The leave statute did not condition the receipt of benefits on the basis of gender. The statute is gender neutral’in text, and provides in pertinent part:
(a) Primary care givers. — With the approval of the head of the employee’s principal department or other independent unit, an employee who is primarily responsible for the care and nurturing of a child may use, without certification of illness or disability, up to 30 days of accrued sick leave to care for the child during the period immediately following:
(1) the birth of the employee’s child; or
(2) the placement of the child with the employee for adoption.
(b) Secondary care givers. — With the approval of the head of the employee’s principal department or other independent unit, an employee who is secondarily responsible for the care and nurturing of a child may use, without certification of illness or disability, up to 10 days of accrued sick leave to care for the child during the period immediately following:
(1) the birth of the employee’s child; or
(2) the placement of the child with the employee for adoption.
Id. The statute makes no reference to a distinction on the basis of gender. Nonetheless, in response to Knussman’s request, Mullineaux told Knussman that he could not qualify as the primary care giver under the statute because he was a man. Based on these facts, it is imperative that any inquiries into the constitutional violation at issue focus on the liberties that Mullineaux took in her capacity as Manager of Medical Leave Benefits.
The Majority misplaces its focus on comparing Mullineaux’s decision to that of legislators and agencies in order to determine the constitutionality of Mullineaux’s decision. The Majority concludes that Mullineaux’s decision is unconstitutional because she based her decision on stereotypical notions of male/female roles in society. It is true that when analyzing a legislative or state enactment on the basis of gender that the gender classification cannot be based on stereotypical notions, and must be substantially related to the achievement of an important government interest. However, this is not a situation where the state government or agency arrived at a calculated or reasoned decision to create a gender based statutory distinction to advance an important government interest. Cf. Heckler v. Mathews, 465 U.S. 728, 744, 751, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984) (upholding limited gender based spousal benefit statute in order to protect a retiree’s reliance on prior provisions struck down as gender based provisions); Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 469-71, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (upholding sex-based statutory rape law, which furthered an important government interest of preventing pregnancy); Rostker v. Goldberg, 453 U.S. 57, 78-79, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (upholding legislative exclusion of women from draft because men and women are not similarly situated for combat). Mullineaux created her own classification that primary care giver equals a woman. By comparing *645 Mullineaux’s actions to promulgated laws that make gender distinctions, the Majority mischaracterizes the gravity of Mulli-neaux’s actions. Mullineaux engaged in the discriminatory application of Maryland’s gender neutral leave statute.
The constitutional right at issue is defined in the plain text of the statute. Knussman had a right not to be discriminated against on the basis of his gender. This inquiry does not require consideration of whether the legislature drew a permissible distinction in law based on gender. The statute is completely devoid of gender classification. Significantly, the nurturing leave statute applies to adoption as well as the birth of a child; therefore, no biological gender classification is implied or inherent in the process of determining whether the leave applicant is a “primary care giver” or a “secondary care giver.” In 1994, Knussman sought leave as a primary care giver pursuant to the nurturing leave statute, which provided 30 days leave for primary care givers and ten days leave for secondary care givers for parents of newborns and newly adopted children. Cloaked with the authority as the Manager of Medical Leave Benefits for the Maryland State Department of Police, Mulli-neaux took it upon herself to interpret this gender neutral statute in a gender specific manner. Mullineaux categorically denied Knussman’s request for leave to care for his newborn daughter as a primary care giver because Knussman was a man. Knussman brought suit against Mulli-neaux, and others, for categorically denying him leave as a primary care giver because of his gender in violation of the Equal Protection Clause of the Fourteenth Amendment. Therefore, for the purpose of analyzing Knussman’s claim, this Court must look at a person’s right not to have a gender neutral statute applied in a discriminatory manner and determine if such right was clearly established at the time of Mullineaux’s actions in 1994.
In 1994, it was clearly established that a person should not be discriminated against on the basis of his gender by having a gender neutral statute applied to him in a discriminatory manner. In order for an identified right to be clearly established, the “ ‘contours of the right’ must be drawn in such a way as to provide notice to a reasonable person in the official’s position that his conduct violated the identified right.” Amaechi v. West, 237 F.3d 356, 363 (4th Cir.2001). By 1994, the Supreme Court conclusively drew the contours of the right to be free from gender discrimination in employment decisions, which are not substantially related to an important government interest. See Davis v. Passman, 442 U.S. 228, 234-35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (holding it violates the Fifth Amendment due process clause to fire a person because she is a woman); Caban v. Mohammed, 441 U.S. 380, 394, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) (holding that sex-based distinctions between unmarried mothers and unmarried fathers, in a domestic relations law provision, are unconstitutional because it bears no substantial relation to any important state interest); Califano v. Goldfarb, 430 U.S. 199, 206-7, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (holding that a gender based distinction between widows and widowers violates the due process and equal protection clauses because they are based on archaic and over-broad generalizations); Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (noting that the archaic and over-broad generalizations of women could not justify use of gender distinctions). In addition by 1994, the Supreme Court conclusively drew the contours of the right to be free from having a neutral statute applied in a discriminatory manner. See Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943) (holding that the unlawful administration of a statute fair on its face, resulting in its unequal *646 application, is a denial of equal protection if it is shown to be intentional or purposeful discrimination present); Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (holding that it is unconstitutional to administer a law that is fair on its face in an unequal manner). The established Fourteenth Amendment jurisprudence in 1994 protected Knuss-man’s right to receive nurturing leave benefits under a gender neutral leave statute without his gender effecting or impeding such decision. Therefore, the right at issue was clearly established because the contours of the right to be free from discriminatory behavior afforded Mullineaux adequate notice that her interpretation of a gender neutral leave statute, which resulted in the gender based denial of a benefit, violated the Fourteenth Amendment.
B.
A reasonable person in Mullineaux’s position would have known that her conduct violated a person’s right not to have nurturing leave benefits administered in a discriminatory manner. Mullineaux was the Manager of Medical Leave Benefits. She worked previously at the Maryland State Department of Personnel, and had approximately 15 years of experience in state employment and administrative policy matters at the time of the incident. J.A. 670, 1058. In 1994, a person in Mulli-neaux’s position and with her experience should have known that Maryland law prohibited her from drawing a distinction on the basis of gender when administering leave benefits to parents caring for their children. Maryland law has made it clear that gender is not a permissible factor in determining the legal rights of a woman or man. See Burning Tree Club, Inc. v. Bainum, 305 Md. 53, 501 A.2d 817, 822 (1985); Condore v. Prince George’s Co., 289 Md. 516, 425 A.2d 1011, 1015 (1981). Therefore, the treatment of any person by the law may not be based on the mere circumstances that such person is of one gender or the other. See Burning Tree Club, Inc., 501 A.2d at 822. Maryland’s Equal Protection Act flatly prohibits gender-based classifications absent substantial justification, whether contained in legal enactments, government policies, or by application of common law rules. See State v. Burning Tree Club, Inc., 315 Md. 254, 554 A.2d 366, 387 (1989); Rand v. Rand, 280 Md. 508, 374 A.2d 900, 903 (1977). Maryland reinforced its mandate of parental equality in 1978 when it unequivocally abolished the maternal preference in child custody cases. See McAndrew v. McAndrew, 39 Md.App. 1, 382 A.2d 1081, 1086 (Md.1978). The highest court in Maryland has clearly stated that a parent is no longer presumed to be clothed with, or to lack, a particular attribute merely because that parent is a male or female. See id. Despite this unequivocal mandate, which Mul-lineaux should have been aware of given her experience and position, Mullineaux discriminated against Knussman by assuming that he, as a man, could not have been the primary care giver for his child.
Moreover, a reasonable leave benefits manager would have known to pursue the proper channels at work to determine the parameters of the newly enacted statute. Mullineaux knew that Director of Legislative and Policy Services, John Irick, had the authority to make policy rulings for the Maryland State Department of Police. J.A. 711. Irick knew that the gender-based denial of Knussman’s nurturing leave request was discriminatory and illegal. J.A. 423, 425, 429. A reasonable leave benefits manager would have known to confirm the statute’s requirements with Irick, prior to giving false information. If promptly asked, Mullineaux could have discovered early on what she should have known: that confining the primary care giver category to women was discriminate- *647 ry and unconstitutional. Ultimately, a reasonable leave benefits manager should have recognized that she was applying a gender neutral leave statute in a discriminatory manner by making only men prove they were primary care givers to newborn or adopted children. A reasonable person in Mullineaux’s position would have known that they were violating Knussman’s right to be free from discrimination on the basis of gender. Therefore, I concur with the Majority’s conclusion that Mullineaux is not entitled to qualified immunity.
II.
The district court did not abuse its discretion in finding that the weight of the evidence submitted supported the jury verdict of $375,000 to Knussman. On a Rule 59 motion for a new trial addressing compensatory damages, the trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false. See Atlas Food Sys. v. Crane Nat’l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996). If the trial court weighs the evidence and determines that it is deficient to sustain a verdict, then the trial court can set aside the verdict and grant a new trial. See id. It is this decision that this Court must review. In reviewing a trial court’s decision to uphold a jury verdict, this Court must determine whether the trial court abused its discretion when it ruled that the verdict was not against the clear weight of the evidence and was not based upon false evidence. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir.1998). Accordingly, the issue before this Court is whether the district court abused its discretion in finding that the $375,000 award was not against the clear weight of the evidence and was not based upon evidence that was false. Appellate review of the evidence demonstrates that as a result of the violation Knussman has suffered emotional distress and has lost priceless time with his child; therefore, the constitutional violation supports the $375,000 award.
A.
The trial court did not abuse its discretion in finding that the weight of the evidence submitted in support of Knussman’s claims of emotional distress supports the verdict. Distress is a component of personal injury that is customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff. See Carey v. Piphus, 435 U.S. 247, 263-64, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). When analyzing a claim for emotional distress premised upon a constitutional violation, a court should consider: (1) the degree of emotional distress, (2) the context of the events surrounding the emotional distress, (3) the evidence tending to corroborate the plaintiffs testimony, (4) the nexus between the challenged conduct and the emotional distress, (5) any mitigating circumstances, and (6) medical attention and/or psychological or psychiatric treatment that the plaintiff received as a result of the emotional distress. See Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir.1996). The uncontroverted evidence of three doctors, Knussman’s family, and Knussman himself were sufficient for a jury and a trial court to find that the evidence presented to demonstrate Knuss-man’s emotional distress supported the verdict.
First, the record supports Knussman’s contention that he suffered a severe degree of emotional distress. Knussman testified that after being denied leave he experienced chest pains and palpitations, depression, loss of enjoyment of activities, loss of sleep, and nausea. J.A. 196, 204-206. In addition, Knussman’s wife testified that Knussman had trouble sleeping *648 and was very withdrawn and depressed. J.A. 525, 529. The severity of Knussman’s distress is best exemplified by Psychologist Susan Toler’s diagnosis of Knussman as having Adjustment Disorder and Major Depressive Disorder. J.A. 560. For example, Dr. Toler described Major Depressive Disorder as a person losing their sense of vitality, their sense of self, them confidence in their own ability to respond to problems, and their ability to enjoy normal or every day ordinary joys. J.A. 560. The Defendants presented no evidence, or contradicting expert testimony that would undermine Dr. Toler’s diagnosis. Accordingly, the weight of this evidence supports a finding that the severity of Knussman’s distress was substantial.
Second, the events surrounding the emotional distress were significant because the constitutional violation concerned the birth of Knussman’s first child, and the severe illness endured by his wife in connection with the birth of their child. During her pregnancy, Mrs. Knussman was diagnosed as having preeclampsia. J.A. 280, 545. This condition extended beyond the birth of their child. If not controlled properly, preeclampsia can cause a triad of swelling, high blood pressure, and protein in the urine. J.A. 280. This process can progress to a point of causing kidney failure, liver failure, or may even become fatal. See id. Preeclampsia crippled Mrs. Knussman’s ability to function, and to care for her newborn child. Notwithstanding these circumstances, Defendants unconstitutionally denied Knussman extended nur-taring leave benefits, and prohibited him from helping his wife to care for their newborn child. Such circumstances surrounding the denial of benefits to Knuss-man contributed to the significance and gravity of the constitutional violation.
Third, the record is replete with evidence corroborating Knussman’s testimony that he suffered distress. Dr. Toler’s testimony corroborates the severity of Knuss-man’s emotional distress. On eleven different occasions during a one year span, Knussman visited Dr. Toler for treatment of his emotional distress. J.A. 533-34. Dr. Toler corroborated Knussman’s testimony in that she reported that Knussman had symptoms of sadness, anxiety, worry, rumination, depression, restlessness, poor concentration, poor self-esteem, paranoia, and anger. J.A. 547-48, 551, 557. Dr. Toler also acknowledged that Knussman suffered many physical symptoms such as panic attacks, chest pains, racing heartbeat, significant sleep loss, and loss of appetite. J.A. 549-50. In addition, Psychiatrist Lidia Wenz’s report further acknowledged that Knussman manifested symptoms of periodic panic attacks of varying severity, hyper vigilance avoidance, and a numbing of emotions. J.A. 1202. Moreover, Knussman’s treating physician, Dr. Michael Crowley, provided testimony supporting the contention that Knussman exhibited some of these signs of stress.[1] J.A. 316. Three different doctors corroborated Knussman’s accounts of distress. Therefore, sufficient credible evi *649 dence exists to corroborate Knussman’s accounts of emotional distress.
Fourth, the nexus between the challenged conduct and the emotional distress is substantial. The challenged conduct at issue is embodied in the jury’s verdict that the State of Maryland, Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Mul-lineaux discriminated against Knussman by denying him leave benefits on the basis of his gender. J.A. 1211. The challenged conduct is the constitutional injury of gender discrimination. Knussman was discriminated against on the basis of his gender when Defendants acted in concert to deny Knussman extended leave benefits. The evidence supports the jury’s conclusion that these actions are inextricably linked to the emotional distress experienced by Knussman. The jury heard the testimony of Dr. Toler who connected the emotional distress experienced by Knuss-man to the overall denial of leave. J.A. 558. Specifically, Knussman’s attorney asked Dr. Toler, “Is it your expert opinion that those physical symptoms that [Knuss-man] was experiencing in 1995 were directly related to the dispute with his employer over leave?” J.A. 550. Dr. Toler responded, “It is my opinion that they are related, [and] that seemed to be the stres-sor that precipitated an evolution of these symptoms.” Id. Dr. Toler concluded further that in her professional judgment if Knussman had been granted leave, then these symptoms that he presented'would not have existed. J.A. 579, 560. Therefore, the evidence substantially supported the nexus between Knussman’s emotional distress and the denial of leave.[2]
Fifth, the evidence shows that Knuss-man received medical attention, psychological treatment, and psychiatric treatment as a result of the emotional distress. As noted above, the evidence submitted showed that Knussman received lengthy psychological treatment from Psychologist Dr. Toler for his emotional distress. In addition, Knussman sought the assistance of Psychiatrist Dr. Wenz who found it necessary to place Knussman on medication to control his symptoms of depression. Dr. Wenz placed Knussman on Prozac in an attempt to help increase the levels of serotonin in Knussman’s body, which in turn would enhance Knussman’s ability to use his body’s natural antidepressants. J.A. 569. Therefore, the medical attention and treatment Knussman received was significant to support the jury’s verdict for damages.
Ultimately, the weight of the evidence supports the relevant factors to be considered in analyzing an emotional distress claim. Therefore, the district court did not abuse its discretion in upholding the jury’s $375,000 damages award.
B.
Even though emotional damages may be sufficient, in and of themselves, to sustain the jury verdict, emotional distress damages were not the only damages requested and awarded in this action. The district court instructed the jury that it could fairly compensate Knussman for any injury caused by the constitutional violation. J.A. 1097-99. This includes the time Knuss-man lost with his newborn daughter. The Maryland statute at issue recognized the importance of a parent and child bonding in the initial days of a newly born, or newly adopted, child. See MD. CODE ANN. § 7-508. The statute implicitly acknowledged the importance of the primary care giver to have up to 30 days leave from work to care for their child. See id. By *650 limiting him to the ten day secondary care giver leave status, Mullineaux denied Knussman his right to care for his child during her initial days on this earth. The jury was in an appropriate position to determine that Knussman suffered quantifiable damages due to Mullineaux denying him the additional 20 days with his child. See generally Conner v. Schrader-Bridgeport Internat’l, Inc., 227 F.3d 179, 201 (4th Cir.2000) (holding that the district court erred in its determination that irrelevant and prejudicial evidence affected the jury’s verdict). It is possible that the jury quantified this pecuniary interest to help contribute to the calculation of the $375,000 award. Accordingly, such a determination further buttresses the district court’s discretion to uphold the validity of the jury verdict.
C.
The Majority sets aside the jury’s $375,000 verdict and remands the case for a trial on damages because it views the nexus between Mullineaux’s actions and the emotional distress experienced by Knussman as “attenuated at best.” The Majority reaches this decision based on its view that Knussman’s emotional distress was the result of this litigation, not the constitutional injury. This approach is flawed for three reasons. First, the Majority minimizes the constitutional injury at issue by describing the injury as Mulli-neaux’s “slanderous words.”[3] Second, the Majority utilizes an amorphous standard, which calls for a jury to explain its particular rationale for its proximate cause finding. Third, the Majority implies that the jury mistakenly included litigation related distress within its calculation of damages yet the Majority does not reference any erroneous jury instruction given by the district court which would lead the jury to incorporate litigation related stress[4] into damages. As seen below, the Majority’s approach does not support the conclusion that the district court abused its discretion in upholding the jury’s verdict.
1.
The Majority minimizes the constitutional violation at issue. The Majority contends that the constitutional violation was Mullineaux denying Knussman the same opportunity to qualify for primary care giver status as would be afforded to a mother. By limiting the constitutional violation to Mullineaux’s sole actions, the Majority minimizes the injury thus enabling it to conclude that the verdict was excessive in light of the evidence. The constitutional violation was gender discrimination. The jury returned a verdict that stated that David Mitchell, David Czorapinski, Ronnie Creel, Jill Mullineaux, and the State of Maryland all denied Knussman leave under Maryland law because of his gender. J.A. 1211. Therefore, the actions of all of the Defendants, not just Mullineaux, compromised the constitutional violation.
The record demonstrates that Jill Mul-lineaux’s actions were egregious by themselves. In response to Knussman’s inquiries, Mullineaux, as the Manager of Medical Leave and Benefits, performed a cursory inquiry into the meaning of the statute, then she erroneously informed Knussman that he was only entitled to secondary care giver status. Subsequently, when Knussman asked a second time if he could receive extended leave as the primary care giver, Mullineaux *651 communicated that the only way that Knussman could qualify for primary care giver status was for his wife to be dead or in a coma.
Similarly, Captain David Czorapinski, participated in the discrimination against Knussman because he initially misinformed Knussmaris supervisor that the primary care giver was presumed to be the mother. Czorapinski subsequently realized that he was misinformed about the presumption of primary care givers being a mother. Nonetheless, during the grievance procedure Czorapinski maintained this erroneous bias. This is evident in Czorapinski’s statement that “All indicators show that Mrs. Knussman was capable of providing for the care and nurturing of their child ... there was nothing offered to indicate that she was unwilling or otherwise unable to provide care for the child.” J.A. 1209. In a less egregious manner, Czorapinski continued to apply the same unconstitutional presumption as Mullineaux: unless Knussman could show that his wife was incapable of taking care of his daughter, Knussman could not be considered the primary care giver under the statute. The jury also found David Mitchell and Ronnie Creel’s actions resulted in a constitutional violation. The evidence submitted showed that both Mitchell and Creel were privy to all of the information, knew of Czorapinski and Mullineaux’s actions, yet failed to act. J.A. 1118, 1132. Therefore, the constitutional violation encompassed (1) Mullineaux and Czorapin-ski’s initial joint decision to only allow Knussman two* weeks nurturing leave, (2) Mullineaux, Creel, and Czorapinski’s subsequent denial of Knussmaris request to have his two week nurturing leave extended, (3) Mullineaux’s remarks that Knuss-maris wife had to be dead or in a coma before he could qualify for more leave, (4) Czorapinski’s continued application of the unconstitutional gender presumption during the grievance procedure, and (5) Creel and Mitchell’s ambivalence and inaction to Knussman even though they were aware of the gender presumption being applied against Knussman. The jury found Knussman was entitled to $375,000 in damages as a result of a series of actions by all of the Defendants. J.A. 1211-13. The damages were not limited to Mullineaux’s actions. Therefore, the weight of the evidence supports the finding that the constitutional injury could have resulted in the damages sustained.
2.
The Majority Opinion creates an amorphous new standard of review for an excessive jury verdict claim, which calls for an appellate court to determine the proportional component of a jury verdict. The Majority remands this case for a trial on damages because it claims it was not possible to determine what proportion of the verdict was intended to compensate Knussman for emotional damages. The Majority looks to the precedent of Carey, Hetzel, and Price to support its conclusion that the constitutional violation did not cause emotional distress warranting $375,000 in damages. See Carey, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252; Hetzel v. County of Prince William, 89 F.3d 169, 171 (4th Cir.1996); Price, 93 F.3d 1241.
However, in contrast to Knussmaris situation, the Carey, Hetzel, and Price decisions focus on cases where the plaintiff failed to show emotional damages. In Carey, several suspended students brought procedural due process claims against a school district. See Carey, 435 U.S. at 263-64, 98 S.Ct. 1042. The plaintiffs put no evidence in the record to show what damages, if any, they sustained as a result of the constitutional injury. The record was completely devoid of any evidence that could form the basis for measuring the extent of their injuries. Ultimately, the Carey Court held that absent proof of actual injury from the constitu *652 tional violation, the students were entitled to recover only nominal damages. See id. at 264, 98 S.Ct. 1042. Similarly, in Hetzel, this Court found that the record was devoid of evidence to show that the plaintiff suffered an actual constitutional injury. See Hetzel, 89 F.3d at 172. In Hetzel, a Hispanic female police officer brought suit against the county and police chief alleging harassment and discrimination on the basis of sex and national origin. Hetzel’s evidence concerning the emotional distress consisted almost exclusively of “Hetzel’s own brief, conclusory statements — compromising less then ten pages of a joint appendix exceeding 5,000 pages — that she had headaches, stress, trouble reading to her daughter, and problems with her family life as a result of appellants’ actions.” Id. at 171. She presented no evidence corroborating specific harm, she continued to perform her duties without a noticeable diminution in performance, and she never saw a doctor, therapist, or other professional. The Court held that the $500,000 award was grossly excessive in light of the limited evidence of harm presented at trial. See id. (holding that the award must be proportional to the actual injury incurred and must focus on the real injury sustained). In addition, in Price, this Court reversed the plaintiffs award of compensatory damages due to the insufficiency of the evidence. See Price, 93 F.3d at 1250. Several White police officers sued the city contending that its race-based promotion policy for police sergeants violated the equal protection clause. At trial, plaintiffs proffered only vague, conclusory testimony concerning their injury. In sum, the police officers said that they suffered feelings of betrayal and humiliation. See id. at 1254. This Court held that the police officers’ testimony simply failed to show any demonstrable emotional injury. See id. at 1254-55. Accordingly, the Court reversed the $3,000 compensatory award damages and awarded $1 in nominal damages. Ultimately, the issues focused upon in Carey, Hetzel, and Price are distinguishable from the case at hand. As demonstrated above, Knussman presented overwhelming and uncontroverted medical and non-medical evidence demonstrating that he suffered emotional distress.
The jury was capable of determining that the constitutional violation caused Knussman’s injuries. It is well settled that causation is ordinarily left for a jury to determine. See Exxon Co., USA v. Sofec Inc., 517 U.S. 830, 840-41, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996) (holding that the issue of proximate causation involves application of law to fact, which should be left to the fact finder, subject to limited review); Conner, 227 F.3d at 201 (holding that the district court erred by overturning the jury’s verdict based on its determination that irrelevant and prejudicial evidence affected the verdict); Aravanis v. Eisenberg, 237 Md. 242, 206 A.2d 148, 158 (1965) (holding that violations and proximate cause of injury were questions of fact properly left for the jury’s determination). Dr. Toler specifically and repeatedly connected the emotional distress experienced by Knussman to the overall denial of leave. J.A. 550-58. After weighing the testimony of the witnesses, and examining the evidence, the jury concluded that Knussman was entitled to compensatory damages in the amount of $375,000. Medical and eyewitness testimony within the record supports the jury finding that Knussman’s injury resulted from the constitutional violation. No reason exists to doubt the jury’s determination and quantification of compensation for Knussman.
The Majority is not satisfied with the jury’s determination that the constitutional violation caused the injury, even though the Majority acknowledges that Knussman produced sufficient evidence of actual injury. The Majority seeks some proportional *653 or mathematical formula for the determination of compensatory damages. The Majority describes the connection between the constitutional injury and the emotional distress as “attenuated at best.” Attenuated means weak or thin. See RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2nd Ed.1987). However, Knussman presented medical testimony specifically connecting the constitutional violation and the emotional distress, and the defense presented no evidence of malingering or overreaching by Knussman. See supra Part II.A. Therefore, the Majority creates a standard that uncontroverted medical testimony affirming the connection between the injury and emotional distress is insufficient as a matter of law. The Majority’s position requires the fact finder to pinpoint and articulate precisely where the plaintiffs emotional distress over the constitutional injury ends, and the emotional distress over the impermissible factor, i.e., the litigation related distress, begins. This is not, and should not be, a prerequisite to sustain a damage award under § 1983. A court of review reviews the record to determine if the clear weight of the evidence supports the verdict. See Cline, 144 F.3d at 301. It is only necessary for plaintiffs to demonstrate, and the jury to find, that a casual connection between the constitutional violation and the plaintiffs demonstrated injury in order to recover compensatory damages. See Price, 93 F.3d at 1251 (citing Gore v. Turner, 563 F.2d 159, 164 (5th Cir.1997)). Therefore, a district court does not abuse its discretion if it upholds a jury verdict where the evidence presents sufficient proof of a constitutional violation, injury, and a casual connection between the injury and constitutional violation. Knussman has produced sufficient evidence of causation. As demonstrated above, the clear weight of the evidence, in the form of Dr. Toler’s testimony, demonstrates a strong link exists between the constitutional violation and the emotional distress experienced by Knussman. Therefore, legally sufficient evidence existed for a reasonable jury to have reached its verdict.
3.
Nothing within record shows that the jury considered litigation related distress as a factor in damages. The Majority remands for damages because in its view the jury factored litigation related distress into its calculation of damages. Defendants had the opportunity to cross-examine Dr. Crowley and Dr. Toler on the issue of litigation related distress. J.A. 319-20, 571-80, 588. In particular, Dr. Toler admitted that the lawsuit was stressful on Knussman because it tended to magnify the events, circumstances, and adversarial relationship that had developed over the course of the years. J.A. 571. Notwithstanding this testimony, it remains possible that the jury found the emotional distress due to the constitutional injury, not due to litigation, caused the injury. Defendants stressed to the jury during the trial that Knussman could not recover damages for litigation related distress.[5] Moreover, the district court’s instructions were clear that Knussman could only recover for damages sustained by the constitutional injury itself. J.A. 1097-98. The Majority references no erroneous instruction given by the district court, which would confuse the jury into incorporating litigation related distress as recoverable damages. See, e.g., Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (reversing jury’s verdict because the trial judge gave an erroneous jury instruction *654 allowing the jury to compensate the plaintiff for circumstances that should not be compensated). The Majority simply implies that it is not comfortable with the jury’s ability to weigh the credibility of the witnesses, or the trial judge’s ability to utilize its discretion, and reach its conclusion that Knussman’s injuries resulted from the constitutional violation. The Majority has no reason to infer or imply that the jury improperly calculated litigation related distress into its $375,000 damages determination. The Majority should not set aside the jury’s verdict as excessive because it cannot succinctly enunciate clear principles for assessment of whether a verdict for compensatory damages, including the medical and emotional distress components, is excessive as a matter of law. Accordingly, the district court’s decision upholding the jury’s award should be affirmed. Therefore, while I concur in the judgment, I respectfully dissent in the decision to remand the case for a trial on damages.

. This is not a situation where the plaintiff failed to produce evidence demonstrating that he suffered an injury. See, e.g., Carey v. Piphus, 435 U.S. 247, 263-64, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (holding that a constitutional violation in and of itself is only entitled to nominal damages absent proof of actual injury in a § 1983 suit); Price v. City of Charlotte, 93 F.3d 1241, 1245 (4th Cir.1996) (reversing compensatory damages award in § 1983 suit and awarding nominal damages where plaintiffs’ emotional distress consisted exclusively of their own conclusory statements); Hetzel v. County of Prince William, 89 F.3d 169, 171 (4th Cir.1996) (reversing and remanding excessive compensatory damages award in § 1983 and Title VII suit where plaintiff presented no evidence to corroborate the existence of her specific harms).

. The Majority holds that the clear weight of the evidence does not support a causal connection between Knussman's emotional distress and the constitutional injury. However, as discussed infra Part II.C, the Majority’s premise for this conclusion is erroneous.

. Mullineaux told Knussman "Unless your wife is in a coma or dead, you can’t be primary care provider.” J.A. 1154, 202-04, 232.

. Defendants raised the issue of non-compen-sable litigation related stress in its cross-examination of Dr. Toler, J.A. 588, two questions in cross-examination of Dr. Crowley, J.A. 319-320, and several questions to Plaintiff, J.A. 259-263.

. It is important to note that Defendants did not present any contrary medical evidence showing that Knussman’s distress resulted from the litigation.